HYMAN REIVER AND ETHEL D. REIVER, his wife, REYNOLDS WIX AND ALICE N. WIX, his wife, DANIEL HORGAN AND KATHRYN MARIE HORGAN, his wife, FRANK L. SCOTT AND IDA SCOTT, his wife, FRANK D. WALKER, EMMA M. STIRLITH, LAURA K. ECKER, CLAYTON R. JARMON AND ELIZABETH F. JARMON, his wife, JOHN A. PRICE AND GEORGIANNA M. PRICE, his wife, WILLIAM E. BEDWELL AND HERBERT H. WHITE, citizens and residents of the State of Delaware,

*vs.*

AUGUSTUS VOSHELL AND MARY E. VOSHELL, his wife, citizens and residents of the State of Delaware.

*New Castle, Jan.* 15, 1932.

*Horace G. Eastburn* and *John B. Jester,* for complainants.

*Aaron Finger,* of the firm of Richards, Layton & Finger, for defendants.

THE CHANCELLOR: The solicitors for the complainants have argued this case on the assumption that the facts show a case of the owner of a vacant plot of land laying the same out in twelve building lots, each abutting upon a fourteen foot, seven inch alley carved out of the rear of the plot, erecting on the plot a solid row of twelve adjoining houses with basement garages, conveying the houses and lots to several grantees together with an easement over the alley for automobiles and other traffic in common with others entitled thereto forever, the owner of the original plot retaining in himself the title to the fee of the bed of the alley, and thereafter selling to another, whose title is derived from a stranger, a right of way over the alley equal in terms to that enjoyed by the grantees from him of the houses and lots in his development.

The bill, answer and stipulation fail to show by direct averments that such was in fact the case. Why the solicitors for the complainants should have omitted to set up their case in that important particular by allegations or proof of a direct and positive nature, I am at a loss to understand. Their brief shows that they regard the case to be of the sort just stated. Yet the court has been compelled to glean the field of facts with painstaking care in order to discover such a case. Inasmuch as the complainants have argued the case on the assumption that it is such a one and the defendants have done likewise, I shall draw the conclusion from rather slender inferences that the fact situation is as the parties have assumed it to be in their ar-

guments. If the conclusion in this regard is seriously questioned, an opportunity will be afforded to the defendants to be heard touching the matter before a final decree is entered, to the end that the court may be set right if its conception of the case as apparently accepted by all the parties is an erroneous one.

I shall proceed then to discuss the case on the assumption that its facts are as the opening paragraph of this opinion sets forth.

The defendants correctly contend that "nothing passes as an incident to the grant of an easement but what is requisite to its fair enjoyment. Notwithstanding such a grant, there remains with the grantor the right of full domain and use of the land, except so far as a limitation thereof is essential to the reasonable enjoyment of the easement granted. * * * Since a private right of way carries with it by implication only such incidents as are necessary to its reasonable enjoyment, the grant of such a right, which is not exclusive in its terms, and which can be reasonably enjoyed without being exclusive, leaves in the grantor the right of user in common with the grantee." This language is found in 9 *R. C. L., p.* 797. It is expressive of the general rule. The absence of the element of exclusiveness, it is to be noted, is essential for the continuance of the grantor's dominion as owner of the fee.

In this case there was no express grant by Mr. Ten Weeges of the fee to the bed of the alley. The doctrine of those cases (of which *Saccone v. West End Trust Co.*, 224 *Pa.* 554, 73 *A.* 971, 24 *L. R. A.* (*N. S.*) 539, cited by the complainants, is an illustration) which hold that, if the premises conveyed are bounded by the grantor upon an alley owned by him, the grantee takes to the middle of the alley, has no application here, for the reason that the deeds to the complainants run only to the northerly side of the alley. *Gray v. Kelley*, 194 *Mass.* 533, 80 *N. E.* 651; *Clayton v. Gilmer County Court*, 58 *W. Va.* 253, 52 *S. E.* 103, 2 *L. R. A.* (*N. S.*) 598; *White's Bank v. Nichols*, 64 *N. Y.* 65.

Where the edge of an alley is the boundary, there is no room to contend that the grantee takes beyond the line of the alley's margin, for the reason that the deed can convey no more than lies within the lines designated.

The complainants in this case cannot, therefore, base any claim of relief upon the idea that the description in their deeds included any part of the bed of that portion of the alley lying immediately in the rear of their respective properties.

The deeds to the complainants did not in terms provide that the easements therein granted should be exclusively enjoyed by the holders of the lots laid out in the development. If there is any element of exclusiveness in favor of the lot owners, it is to be derived, not from the terms of the deeds, but from the facts and circumstances attending the act of Mr. Ten Weeges in laying out a scheme of development of his plot by dividing it in the manner shown on the plan delineated in the foregoing statement of facts, and following this by the construction of the houses and the conveyance of them to the complainants or their predecessors in title. There can be no doubt but that the alley was laid out for the benefit of the Twentieth Street properties. Each of the houses (except No. 122) was built for the accommodation of an automobile in a basement garage with a concrete runway leading to the alley. Mr. Ten Weeges is under no obligation to keep the alley in repair suitable for the enjoyment of its use. If it is to be kept in passable condition, the burden of upkeep must necessarily fall on the users of it.

The question arises of whether, under the circumstances shown, it does not follow that, notwithstanding the absence in the deeds of an express grant of an exclusiveness of use, the alley nevertheless was intended by the grantor and the grantee in each deed to be used exclusively for the benefit of the owners of the houses built by the grantor in developing and marketing his plot of land. In *Greene v. Canny,* 137 *Mass.* 64, which was a case sufficiently

similar in its facts to make it applicable in principle to the instant one, it was said that "it cannot be important that the grantor does not state in terms that he lays out the way solely for these lots, or that he does not by express words exclude any others from the benefits thereof." So here, the silence of the deeds upon the question of exclusiveness is unimportant, for the surrounding circumstances supplement the deeds and show that the parties contemplated that the alley should be devoted solely to the accommodation of the dwellings whose only method of ingress and egress to and from the basement garages was out through the rear and over the alley.

In substance the situation in this regard was similar to that found in *Greene v. Canny, supra.* Other similar features between this case and the cited one are that, in both the burden of repair rests on the lot owners, in the Massachusetts case by reason of express provision to that effect, in this one by necessity; in both, with the sale of the lots the scheme of the grantor was complete, and if others than the grantees could obtain rights of way, the grantees would be subjected to a greater burden of repair. The Massachusetts court concluded from the facts before it, which as before stated are closely similar to those found here, that "the owner of the fee in the land retained no interest in it which would enable him to grant rights of way over the way to land which he never owned, and for which it was not designed." The owner was said to hold the title simply as a barren fee, and it was further held that for the owner to grant rights of way to others than the lot owners, would be to grant obstructions of those which he had already granted. Such grants, said the Massachusetts court, would add to the expense of those who were to keep the way in repair, while their own enjoyment would be less convenient and beneficial as it might be more or less interfered with by the enjoyment of others.

This case answers the objection of the defendants both as to the point of lack of exclusiveness and of the absence

of obstruction. In line with it is the earlier case of *Kirkham v. Sharp*, 1 *Whart.* (*Pa.*) 323, 29 *Am. Dec.* 57, which it cites. That case holds that "the ungranted residue of a right of way may be annexed to a particular messuage or close, either by express stipulation or necessary implication, according to the occasion of the grant." Chief Justice Gibson in speaking for the court said:

> "An instance of this might be found in the disposal of houses surrounding a court, originally destined to be a common avenue to them, in which it would be sufficiently obvious from the disposition of the property, that the right of way had been appended to the houses and not to the owner of them. By the act of laying out the ground as a court, it would be allotted to the houses intended to adjoin it, so as to pass with them as an appurtenance; and the right of the owner would be correspondingly qualified by the nature of the use to which it was dedicated. Sales of the houses would successively abridge it, till it were ultimately extinguished along with his property in the last of them, when the purchasers might, by common consent, bar the entrance against his person, notwithstanding his legal title, just as they might bar it against a stranger."

The only difference between the illustrative case stated by Chief Justice Gibson and the instant one is that instead of the area subject to the common use being in the form of a court surrounded by houses, here it is one of a linear dimension with the properties of the common users backed up against it—a difference which seems to me to be one of non-essential physical circumstance only.

*Kirkham v. Sharp*, held that the owner of the title to the barren fee of the alley had no right to use it for the purpose of access to other premises owned by him to which the use of the alley had never been made appurtenant. The defendants contend that if *Kirkham v. Sharp* be an authority against them, the later Pennsylvania case of *Smith v. Rowland*, 243 *Pa.* 306, 90 *A.* 183, overthrows it. In this they are in error, for *Smith v. Rowland*, points out the distinguishing principle on which the *Kirkham Case* was rested and apparently approves it. The instant case falls within the rule of *Kirkham v. Sharp*. It is distinguishable

from *Smith v. Rowland* on the ground that there was nothing in the facts of the latter that remotely approaches the situation of a plotting and development of a real estate improvement and the sale of dwellings after the scheme of development was completed.

The case of *Jarman v. Freeman*, 78 *N. J. Eq.* 464, 79 *A.* 1065; *Id.*, 80 *N. J. Eq.* 81, 83 *A.* 372, supports the complainant's contentions in the instant one. The case is not one where the easement "was created expressly and exclusively for certain specific lots," as stated by the solicitor for the defendants, if he means thereby to say that the deed in terms so provided. A ten foot alley was laid out by the owner of the land between a forty foot lot conveyed out of it to the complainant and the remaining portion of the land held by the grantor. The complainant was granted an easement over the alley in common with the grantor. Later the owner acquired other land in the rear of the alley's end, and undertook to convey to his grantee of the later acquired land the right of ingress and egress over the alley. It was held that notwithstanding the title to the bed of the alley remained in the complainant's grantor, he could not extend the use of the way to other lands when such use is operative to interfere with the full enjoyment of the easement in behalf of the dominant tenement, or to increase the burden of repair which accompanies the easement. The mere use of the alley by the new grantee was *held* to constitute such an injury to the complainant's right of user, though slight, as to warrant the issuance of an injunction.

I have examined all the cases cited by the solicitor for the defendants and find nothing in them at variance with the doctrine of the Massachusetts, Pennsylvania and New Jersey cases hereinabove referred to. The principal ones relied on by the defendants and their points of differentiation from the instant one will now be stated. The case of *Smith v. Rowland, supra,* relied upon by the defendants as similar in principle to the one *sub judice*, has at an

earlier place in this opinion been distinguished. *Campbell v. Kuhlmann,* 39 *Mo. App.* 628, is quoted from by the defendants *in extenso.* That case is one that falls under the general rule and presents the simple proposition that if A. owns land and grants to B. a right of way over it, A. retains the right to make use of the same way in a manner that does not interfere with B.'s enjoyment of it, unless the terms of A.'s grant expressly exclude him. Manifestly the instant case is not of that type. The other cases and textbook authorities cited by the defendants are to the same effect generally as the Missouri case, except those that deal with the proposition that no part of an alley is conveyed by a deed which describes the outer line of the alley as a boundary, a proposition which this opinion accepts as a correct statement of the law and which is of no consequence upon the result.

I cannot see any occasion for applying to this case the doctrine, urged by the defendants, that the granting of injunctive relief is a matter of grace and that such relief will be administered according as its granting or denial will bear the more harshly upon one party or the other. If the complainants have the right to keep the defendants from using the alley, the defendants are in no position to say that the complainants, in exercising that privilege, are making an unconscionably severe assertion of their rights. The only thing, so far as I can see, that can be said about them is that they decline to be generous.

The answer of the defendants contains the averment that the agreement between the complainants and Ten Weeges respecting the use of the driveway was expressed in the several deeds from him to the complainants, and that at the time of the execution to the defendants by Ten Weeges of the deed granting them the right to use the driveway or alley, the defendants had no knowledge of any alleged rights of the complainants, or any of them, respecting the use of the driveway other than as expressed in the several deeds to the complainants recited in the bill of com-

plaint. To this it is sufficient to reply that the deeds themselves when given their setting in the Ten Weeges tract and the physical situation of the properties, were enough to put the defendants upon notice. The facts out of which the law raises the rights of the complainants were known to the defendants. If the knowledge which those facts gave of Ten Weeges inability to grant a right of way was not grasped by them, the fault is theirs.

It is suggested in the defendant's brief that the complainants are not interested in keeping the defendants from enjoyment of a right of way over the alley; that what they are really interested in is to prevent Ten Weeges from selling a similar right to the ten other property owners who are located in the same block as the defendants, to the end that the complainants might themselves make such sales. That may be so. I doubt it, however, for it would seem not at all unreasonable that the complainants should be genuinely disturbed by the contemplation of having eleven other families admitted as common users of the way. However, the suggestion is of no moment. If it were true, it would seem that as between Mr. Ten Weeges on the one hand and his twelve grantees on the other, the latter would have a more just and equitable right to make money out of marketing the alley's use than would he.

Decree for the complainants.