187 A.2d 421 (1963)
A. Felix duPONT, Jr., and Henry B. duPont, Partners, T/A Rodney Real Estate Associates, Plaintiffs.
v.
AMERICAN LIFE INSURANCE COMPANY, a corporation of the State of Delaware, Bank of Delaware, a corporation of the State of Delaware, as Trustee under the Will of Christopher L. Ward, and Rodman B. Ward, Carole Clay Ward, Esther Ward Kimball, Alison Ward Burdick, Charles P. MacArthur, Jr., Mary MacArthur Bartlett, Mary Govan Billups, and all unknown persons claiming any right, title or interest in or to the lands and premises situate at 12th and Market Streets, Wilmington, Delaware, Defendants.
Court of Chancery of Delaware, New Castle.
January 8, 1963.
*422 Henry M. Canby and Richard J. Abrams of Richards, Layton & Finger, Wilmington, for plaintiffs.
Benjamin N. Brown and Richard J. Baker, Wilmington, and Frank G. Sterritte, New York City, for defendant, American Life Insurance Company.
Frank J. Miller, of Foulk, Walker, Miller & Wakefield, Wilmington, Guardian ad litem for unknown minor defendants.
SEITZ, Chancellor.
Plaintiffs are seeking to quiet title to a parcel of real estate at the southwest corner of 12th and Market Streets in Wilmington on which the Elks Club and Rodney Hotel were formerly located. Defendant American Life Insurance Company ("American") is a prospective purchaser of this parcel from the aforesaid plaintiffs under a written contract dated April 23, 1962. American has refused to consummate the contract on the ground that plaintiffs do not have good, clear and freely marketable title to the premises in question. The other defendants are all those persons, known or presently unknown, who are the successors in interest of either Morgan Jones or Joseph Robinson, former owners in fee of this property, and who may be in a position to assert any claim of right, title, or interest derived through their predecessor. All of the ascertained individual defendants have defaulted, and suit is presently resisted by American and by the guardian ad litem, appointed by the court for the protection of unknown minor persons.
This is the decision on plaintiffs' motion for summary judgment seeking a decree removing the cloud on their title and an order requiring American to perform its written contract to purchase the property.
On January 26, 1814, Morgan Jones and Joseph Robinson acquired from Sally Norris Dickinson as tenants in common the parcel of land here in question as well as certain other lands and premises not material to our present consideration. Jones and Robinson subsequently divided the whole of the lands so acquired into forty separate parcels or lots for resale. The parcel with which this controversy is concerned was itself divided into six lots of land together with a six-feet-wide passageway which adjoined, and was appurtenant to, each of the six lots. Five of the lots faced on Market Street and the sixth on 12th Street (then Dickinson Street), the alley lying between. The passageway formed a cul-de-sac opening into 12th Street, and the issue presently before the court concerns the ownership of the legal title to the bed of this alleyway.
During the period from April 3, 1815 to February 6, 1816, Jones and Robinson sold and conveyed all of the six parcels adjoining the alleyway[1]. The first of such deeds, that pertaining to Lot No. 3, noted that the original Dickinson lot had been divided into "forty lots or parcels." Each of the deeds expressly referred to the six-foot alleyway as an appurtenance to the parcel conveyed and stated that the grantee of each such *423 parcel was to enjoy the use of the alleyway in common with the other present and future owners of the parcels abutting upon it[2]. Each deed described the parcel conveyed by metes and bounds, and in each case the parcel was bounded on one side by the nearest side line of the alley. Whenever a parcel was bounded by the alley or a street, the line was stated to run from a corner stake in the alley or street and "binding with", or "with", or "along" the stated side of the alley or street to the next corner stake.
Each of the parcels constituted a rectangle whose courses and distances were given. The quantity of land conveyed is stated in the respective deeds and is determined from the given lengths of the side lines.
Defendants contend that the effect of this language was to lay out unambiguously rectangular parcels whose boundaries extended only to the edge of the alley, together with an easement in common appurtenant to each such parcel. None of the deeds declared in explicit terms whether fee title to any part of the alleyway was intended to remain in the vendors or pass to the respective purchasers. Neither Jones nor Robinson or their heirs ever of record purported to convey the bed of the alleyway.
In 1944, for the first time since the original subdivision of the lot by Jones and Robinson, title to all six parcels was again held by the same owner. In the interim period free use of the alley had been obstructed in large part after 1926 by the building known as the Elks Club which was situated on the major portion of Lots Nos. 3, 4, 5, and 6. In 1935, the then owners of all six lots agreed in writing to renounce all cross-rights in the common alleyway with respect to that portion already obstructed by the Elks Club building. Nevertheless, until 1947, every deed of the property was drawn in substantially the same terms as the original Jones and Robinson deeds, referring to the alleyway as an appurtenance for the use in common by the owners of each of the abutting parcels. Beginning with the Zitreen deed of February 1, 1947, however, each successive conveyance of these properties (which formerly comprised Lots Nos. 1 through 6) described the premises in one inclusive description without reference to the alleyway which had become incorporated within the outside boundaries. Thus, in the contract of sale between plaintiffs and defendant American, reference having been made to the description in the deed to plaintiffs, no intimation was given that legal title to the bed of the alleyway might belong to someone other than the vendors. American subsequently refused to consummate the contract on the ground that plaintiffs did not have marketable title with respect to the bed.
The basic issue presented here is whether the court should apply a rule of construction, admittedly found in a majority of the modern decisions, that unless the original grantors expressly reserved in themselves legal title to the alleyway, title is deemed to have been intended to pass to the respective grantees to the midline of the alley. See Annotation, 49 A.L.R.2d 982. This rule, sometimes said to be a presumption of intention, is founded on the proposition that as a matter of practicality a grantor is unlikely to retain for himself title to lands subject to public or exclusive private use which adjoin other lands already conveyed by him. Moreover, as a matter of policy, it is said, courts will require one who claims to have retained in himself "vexatious" title to such property to have made known his intention in that regard by appropriate language in the deeds. The wisdom of such a rule is I think well illustrated by the present case. That Jones *424 and Robinson subdivided the Dickinson plot for resale is undisputed, and neither the circumstances of the case nor the research of counsel have suggested any reason why the grantors of these parcels should have retained naked title to the bed of the alleyway. The alleged rights presently asserted by the guardian ad litem, after a silence of almost a century and a half, amount in substance to a mere abstraction of law. It is not contended that if title were found to belong to these unknown claimants, they would thereby acquire any rights of user in the property.
Defendants acknowledge the adverse trend of recent decisions but contend: (1) that in Reiver v. Voshell, 18 Del.Ch. 260, 158 A. 366, Chancellor Wolcott laid down a different rule which had long been applied to such cases in some other jurisdictions, and (2) that in any event this particular case must be controlled by this purportedly older rule of construction, since it would allegedly have been applied by the courts of Delaware in interpreting these deeds around 1816.
Preliminarily, the view which defendants contend existed in Delaware at an earlier time and which is purportedly evidenced by Reiver v. Voshell is that whenever a parcel is set off precisely from a street or alley by metes and bounds as opposed to a more general description, that description necessarily precludes conveyance of title to the midline of the bed. Not only would the rule of construction requiring an appropriate reservation of title to the bed by the grantor fall out of the case, but also any presumption with respect to the grantor's intention. Thus, certain language if used in the instrument would prevent further investigation by the court into the intentions of the parties or the facts and circumstances of the particular case.
Defendants contend that Reiver v. Voshell, supra, requires a construction different from the "modern" view, viz., that the use of a metes and bounds description precludes a finding that title to the bed was intended to be included in each deed. In that case, however, Chancellor Wolcott expressly stated that the case was presented upon an assumed state of facts, one of which was that title had not passed by deed with respect to the bed of the alley. Thus, he was not there called upon to decide the very issue upon which the present case turns. The facts having been stipulated by the parties, the Chancellor had no occasion to scrutinize the language of the deeds or examine critically the surrounding circumstances with respect to this particular issue. It is of course true that the more ambiguous the language of a deed with respect to an alleyway the more likely it is that the deed will be construed strictly against the grantor. But precision of description ought not, on the other hand, preclude an investigation into surrounding circumstances to assist the court in arriving at the proper construction of the deed. In cases of this nature where it is claimed that the grantor intended to retain for himself bare legal title it is appropriate I think to require that some clear manifestation of that intention be indicated. I find it lacking here.
Next, defendants contend that the original deeds must be construed in light of the laws of Delaware as they existed when such deeds were delivered. Assuming without deciding that the rule of construction then existing would be entitled to some consideration in interpreting these deeds, I nevertheless find nothing in the early case law that would support the view on which defendants insist. The only reported Delaware case is Reiver v. Voshell, supra, which is discussed above. Prior to the Chancellor's decision in that case in 1932, Delaware could not be said to have had any settled rules with respect to deeds of this nature. Thus, it can hardly be contended that as between grantor and grantee these deeds were drawn with a settled view of the law in mind. And it would not seem appropriate under the circumstances for the court to formulate an archaic rule of construction *425 to be applied in this particular case which would commend itself neither to reason nor policy.
Plaintiffs have made certain other contentions with respect to these parcels which in view of the conclusions here reached I need not decide. A judgment will be entered decreeing removal of the cloud on plaintiffs' title to the bed of the alleyway and compelling performance by American of its written contract to purchase the property.
Present order on notice.
NOTES
[1] There is no record of any conveyance of Lot No. 2 by Jones and Robinson. The existence of such a deed, however, is under the circumstances necessarily to be inferred. In any event, possession of Lot No. 2 and of any appurtenant rights has been maintained under a claim of right for more than a century by a series of purchasers.
[2] None of the deeds states expressly that use of the alley was to be exclusive in the respective grantees, but from the language of the deeds and the circumstances under which they were drawn the exclusivity of such use is I think established. See Reiver v. Voshell, 18 Del.Ch. 260, 158 A. 366.