Ronal W. SMITH and Nancy L. Smith,
his wife, and William T. Lowe,
Plaintiffs Below, Appellants,

v.

Otis H. SMITH t/a Bay Manor Farms,
Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: Feb. 2, 1993.
Decided: March 22, 1993.

William E. Wright and Douglas W. Troll, Terry, Terry, Wright & Speakman, P.A., Lewes, for appellants.

James F. Waehler and Brian D. Shirey, Tunnell & Raysor, Georgetown, for appellee.

Before VEASEY, Chief Justice, MOORE and WALSH, Justices.

WALSH, Justice.

In this appeal from the Court of Chancery, we address the question of whether a grantee in a private conveyance of land bounded by, or abutting on, a railroad right of way is presumed to take a fee simple title to the centerline of the railroad with the right to claim such title in the event the right of way is abandoned. In dismissing the underlying action, the Court of Chancery ruled that the rule announced in *duPont v. American Life Insurance Company*, Del.Ch., 187 A.2d 421 (1963), which applied such a presumption to land abutting an alleyway, should not be extended to land abutting a railroad right of way. We conclude that the rationale and policy considerations which support the presumption in the context of alleyways find equal application to railroad rights of way. Accordingly, we reverse.

## I

The Court of Chancery decision was based on a stipulated record reflecting the following facts.

The appellants, Ronal W. Smith and Nancy L. Smith (the "Smiths") and William T. Lowe ("Lowe") (collectively "petitioners"), brought a joint action in the Court of Chancery to remove an alleged cloud upon their respective titles to a strip of land 66 feet in width and 739.5 feet in length separating their properties ("the parcel"). The parcel had been used for more than a century as a railroad right of way, most recently by the Penn Central Railroad Company ("Penn Central"). Penn Central, however, abandoned the right of way in 1972. The railroad tracks were removed in 1977 and Penn Central's interest in the parcel was conveyed by quitclaim deed in 1978 to appellee, Otis H. Smith T/A Bay Manor Farms ("Bay Manor").

The genesis of this dispute lies in the 1877 extension of a railroad line from Lewes to Rehoboth. In that year, Edward D. Hitchens ("Hitchens"), along with a number of other Sussex County landowners, entered into an agreement with the Junction and Breakwater Railroad Company (the "Junction and Breakwater Railroad"), granting a right of way through their lands for construction of a railroad from Lewes to Rehoboth. The agreement provided in pertinent part:

## AGREEMENT

We the undersigned land owners on the direct line run and surveyed by Col. John L. Mapes, Engineer in the year 1877, from the Depot of the Junction and Breakwater Railroad Company at Lewes in Sussex County Delaware to the Camp Ground of the Rehoboth Beach Camp Meeting Association in said County hereby for and in consideration of the sum of one dollar to each of us paid by the said Junction and Breakwater Railroad Company, *severally and respectively promise, engage and agree to and with the said Railroad Company to give grant and convey by good and sufficient deed and deeds to the said Junction and Breakwater Railroad Company the right of way on and along said direct line to the width of thirty three feet on each side of said line* as surveyed and laid out by said Engineer, and the same shall be free from any other charge or claim of damages, and upon the further consideration of and upon the express condition that said Company shall build and construct a branch road on and along said line during the [year] 1878. (emphasis added)

\* \* \* \* \* \*

The parcel in dispute, totalling 1.12 acres, is a portion of the right of way

granted under the 1877 agreement.[1]

In 1892, John M. Barnes ("Barnes") purchased Hitchens' property at public auction from the administrator of his estate. The record includes a confirmatory deed evidencing this sale which identifies the property conveyed as "Tract No. 5" in Lewes and Rehoboth Hundred, abutting the property of certain named individuals, containing 28¾ acres more or less, "with all appurtenances thereto appertaining." There is no metes and bounds description.

In 1909, Barnes conveyed the property to Arthur M. Hudson. Unlike the deed executed in 1892, however, this deed contains a metes and bounds description. The conveyed interest is described as "lying on both sides of the D.M. and V.R.R." [2] The metes and bounds description is as follows:

Beginning at a stone a corner for lands of the heirs of Elilas (sic) J. Morris, deceased, thence with said Morris lands North forty four and one-half degrees West forty three and two tenths perches to a stone, a corner for said lands; *thence with said lands, and crossing the D.M. and V.R.R.* North forty four and one fourth degrees East one hundred and eight-tenths perches; thence with lands of the heirs of Jane McStraine (sic), deceased, south forty two and three quarters degrees East forty three and two tenths perches; *thence with lands of William P. Orr (sic) and crossing said railroad* south forty four and one fourth degrees west one hundred and eight and eight tenths perches, home to the place of beginning, *containing (exclusive of the lands of the D.M. and V.R.R.) twenty eight and three eights acres,* more or less.... (emphasis added).

Thereafter the 28 acre property was transferred in 1912, 1937, twice in 1945 and again in 1948. The subsequent deeds all recite a description which twice crosses the railroad right of way. In addition, all deeds contain essentially the same description of the tract's acreage.[3]

The 1948 transfer was to the petitioners' common grantor, Edwin S. Custis ("Custis"). In 1958, Custis transferred the 6⅔ acres south of the railroad right of way to Lowe and his wife, using the following metes and bounds description:

All that certain tract, piece and parcel of land, situate, lying and being in Lewes and Rehoboth Hundred, Sussex County, Delaware, lying on the northwesterly right of way of what is known as "Gill's Neck" road, more fully described as follows, to wit: *Beginning at a stake in the northwesterly right of way line of said highway, a corner for these lands and lands of D.M. & V. Railroad;* thence by and with these lands and the northwesterly right of way line of said highway, south 44¼ deg. west 19.5 perches to a stake, a corner for these lands and in line of lands of Harry E. Williams; thence by and with these lands and lands of said Williams, north 44½ deg. west 43.2 perches to a stake in line of lands of Harry E. Williams; *thence by and with these lands and lands of said Williams, north 44¼ deg. east 34.12 perches to the right of way line of said Railroad; thence by and with said Railroad, in a southeasterly direction, home to the place of beginning,* containing 6⅔ acres of land, more or less.

Being part of the same lands conveyed to Edwin S. Custis.... (emphasis added)

In 1969, Custis' heirs transferred the remaining 14.29 acres north of the railroad right of way to the Smiths. The metes and bounds are described as follows:

1. The record does not indicate whether a deed was ever given to the Junction and Breakwater Railroad implementing this obligation. The Chancellor viewed the absence of a deed as evidence that the Junction and Breakwater Railroad received the right of way as an easement. For our purposes, however, whether a deed was ever given to the Junction and Breakwater Railroad is irrelevant.

2. The Junction and Breakwater Railroad later became the Delaware, Maryland and Virginia Railroad.

3. An intervening conveyance of a part of the tract by George F. Winkler, the first of the 1945 grantees, reduced the size of the tract to 21.47 acres.

That certain lot, piece and parcel of land, situate, lying and being on the northerly side of State Route 267, in Lewes and Rehoboth Hundred, Sussex County, and State of Delaware, more particularly described as follows, to wit: *Beginning at a pipe located at the intersection of the northerly edge of the right of way of State Route 267, said right of way being 50 feet wide, with the easterly edge of the right of way of Penn Central Railroad, said right of way being 66 feet wide; thence by and with the said easterly right of way of Penn Central Railroad North 26°35′ West 739.35 feet to a pipe, being a corner for lands of Otis H. Smith (Bay Manor Farms);* thence by and with a concrete rail fence located on the said lands of Otis H. Smith, North 44°15′ East 777.22 feet to a concrete fence corner post; thence continuing with the said concrete rail fence located on the said lands of Otis H. Smith, south 45°37′30″ East 689.49 (sic) feet to a pipe located at the edge of the said northerly right of way of State Route 267; thence by and with the said northerly right of way of State Route 267, South 43°45′ West 1018.49 feet to the place and point of beginning, said to contain 14.290 Acres, be the same more or less ...

Being part of the same lands of which Edwin S. Custis died intestate.... (emphasis added).

Penn Central became the ultimate successor of the Junction and Breakwater Railroad and acquired the right of way over the parcel. The right of way was used for railroad purposes until it was abandoned by Penn Central in 1972. Although the tracks were removed in 1977, Penn Central continued to pay taxes on the right of way until it conveyed its interest in the property to Bay Manor by quitclaim deed in 1978.

On May 8, 1988, the Smiths and Lowe filed a petition in the Court of Chancery, seeking a declaration that Penn Central's quitclaim deed to Bay Manor constituted a cloud on their titles. The petitioners further requested the court to declare that the quitclaim deed was of no legal effect, *i.e.*, it

did not convey legal title to the parcel. Bay Manor filed an answer, denying petitioners' claims and requesting that Bay Manor be declared the owner of the right of way.

Initially, petitioners sought a determination through summary judgment. The Court of Chancery ruled, however, that there existed material factual disputes as to when Penn Central abandoned its easement and whether Bay Manor had acquired title to the right of way through adverse possession. Subsequently, the parties filed a stipulation of facts and documentation and Bay Manor abandoned its contention that it had obtained title to the right of way through adverse possession. Both parties then filed cross motions for summary judgment.

The Chancellor examined the petitioners' common chain of title and concluded that Hitchens had granted an indefinite easement for railroad purposes to the Junction and Breakwater Railroad. When its successor, Penn Central, ceased to use the right of way for railroad purposes, the easement was terminated. Neither party has appealed this portion of the Chancellor's ruling.

The Chancellor also ruled that the petitioners failed to show that they have title to the right of way. The Chancellor determined that, although down through the grant to Custis it is clear that the deeds convey, by metes and bounds description, the fee to the right of way along with the remaining parts of the tract, when Custis subdivided the tract he did not convey that part of the fee subject to the railroad right of way. It is this ruling that is on appeal.

II

The construction of a deed is a question of law. *Rohner v. Niemann,* Del. Supr., 380 A.2d 549, 552 (1977). On appeal, our review is *de novo, Judge v. Rago,* Del.Supr., 570 A.2d 253, 255 (1990), and where the trial court's decision was directed to a stipulated factual record we are free to provide our own view of the record.

The fundamental rule in construing a deed is to ascertain and give effect to the intent of the parties as reflected in the language they selected. *Rohner v. Niemann*, 380 A.2d at 552. If there is no reasonable doubt as to the meaning of the words, the deed is unambiguous and the Court's role is limited to an application of the meaning of the words. *Daniels Gardens, Inc. v. Hilyard*, Del.Ch., 49 A.2d 721, 723 (1946). *Compare Hudson Farms, Inc. v. McGrellis*, Del.Supr., 620 A.2d 215 (1993) (statutory interpretation).

Down through the grant to Custis, the language of the deeds in petitioners' chain of title reflect a conveyance of the fee to the right of way along with the adjacent parts of the tract. In the 1909 deed to Arthur M. Hudson, the metes and bounds of the conveyed property are described as crossing the right of way twice, thus including the right of way in the conveyance:

> Beginning at a stone corner for lands of the heirs of Elilas (sic) J. Morris, deceased, thence with said Morris lands ... to a stone, a corner for said lands; thence with said lands, and *crossing the D.M. and V.R.R.* ... thence with lands of the heirs of Jane McStraine (sic), deceased ... thence with lands of William P. Orr (sic) and *crossing said railroad* ... home to the place of beginning ... (emphasis added).

Each of the subsequent deeds, including that to Custis in 1948, contains a similar metes and bounds description.

It is only when a deed in the chain of title describes the amount of acreage conveyed that a question arises as to whether the right of way is excluded. In the 1909 deed, as well as in subsequent deeds, the property is described as "containing (exclusive of the lands of the D.M. and V.R.R.) twenty eight and three eights acres, more or less ..."[4] This exclusion, however, does not foreclose the existence of a fee simple title based on the reversion rights of the adjacent title holders. The language merely affirms the existence of a previously granted easement for the purpose intended.

The language in the petitioners' deeds, however, is ambiguous. In the 1958 deed to Lowe, the metes and bounds of the conveyed property are described as running "by and with [the] Railroad." Similarly, in the 1969 deed to the Smiths the metes and bounds of the conveyed property recite a line as running "by and with the ... right of way of Penn Central Railroad." These ambiguities render it difficult to determine whether Custis and his heirs intended: (i) to retain title to the right of way; (ii) to convey the entire right of way to either Lowe or the Smiths; or (iii) to follow convention by conveying half of the right of way to Lowe and half to the Smiths.

In order to resolve the ambiguities present in the various deed descriptions relating to the disputed parcel, we apply accepted standards of construction. Preliminarily, we note that petitioners seeking to remove a cloud on title must prevail on the strength of their own titles and may not rely on the weakness of another's title. *Marvel v. Barley Mill Road Homes, Inc.*, Del.Ch., 104 A.2d 908, 911 (1954). To the extent that uncertainties appear in a grant of real property, "they must be resolved in favor of the grantee as long as such a construction does not violate any apparent intention of the parties to the transaction." *Rohner v. Niemann*, 380 A.2d at 552. In resolving ambiguities in a grant, the intention of the parties to the transaction is paramount but certain "presumptions of intention" may serve to resolve doubt. 6 *Thompson on Real Property* § 3068 (1962). Two presumptions find application in this dispute: (1) absent language in a deed to the contrary, a grantor is presumed to intend to convey the largest bundle of rights he or she possesses, 23 Am.Jur.2d *Deeds* § 335 (1983); and (2) a conveyance of title to adjacent property served by an easement is presumed to pass title to the center line of the easement. 12 Am.Jur.2d *Boundaries* §§ 22, 38, 54 and 55 (1964).

There is no dispute that, as the Chancellor determined, Penn Central's sole interest

---

**4.** As noted earlier, an intervening conveyance in 1945 reduced the size of the tract to 21.47 acres.

in the disputed parcel was that of an easement holder. Although Bay Manor refers to that interest as a "right of way," for present purposes any difference is not significant. Neither Penn Central nor any predecessor railroad claimed ownership to the property in fee. Penn Central's quitclaim deed to Bay Manor thus conveyed only such interest not reasonably excluded by prior conveyances to the petitioners, or reserved by their common grantor, Custis or his heirs. Moreover, since the purpose of the easement has long since been abandoned, Bay Manor took no interest in the easement itself. *State ex rel. Dept. of Transportation v. Penn Central Corp.,* Del.Super., 445 A.2d 939 (1982).

In rejecting Bay Manor's contention that the 1877 agreement created an easement not a fee, the Chancellor concluded that Hitchens, the original grantor, retained title to the fee underlying the easement. He went on to rule, however, that the ultimate holder of that fee, Custis, never conveyed that part of the fee subject to the easement because of the descriptive language of the petitioners' deeds. Since the petitioners must look to the strength of their own titles, they are not aided by the possible existence of a reversionary interest in a third party. In his holding, however, the Chancellor refused to accord the petitioners the benefit of the adjacent easement presumption and it is in this respect that we find error.

■ The issue of whether a deed conveying property abutting a railroad right of way should be presumed to convey to the center of the right of way where the grantor owns the fee in the right of way and has not clearly and expressly reserved a fee interest in the deed appears to be a question of first impression in Delaware. The presumption has been applied, however, with respect to alleyways.[5] In *duPont v. American Life Insurance Company,* Del. Ch., 187 A.2d 421 (1963), the Court of Chancery considered whether a deed conveying property abutting an alleyway should be presumed to convey to the center of the alleyway where the grantor owned the fee in the right of way and had not clearly and expressly reserved legal title. The court there adopted the majority rule and held that "the court should apply a rule of construction ... that unless the original grantors expressly reserved in themselves legal title to the alleyway, title is deemed to have been intended to pass to the respective grantees to the midline of the alley." *Id.* at 423. The court noted that "a grantor is unlikely to retain for himself title to lands subject to public or exclusive private use which adjoin other lands already conveyed by him." *Id.* Given the similarity between alleyways and railroad rights of way, both types of easements, we find that rationale to have equal application in the present dispute.

Courts in other jurisdictions which have considered the question of whether a grant of adjacent lands is intended to pass title to the midline of a railroad right of way are not in total agreement. A majority of the jurisdictions which have considered this issue appear to have adopted the rule that a grantee in a private conveyance of property bounded by or abutting a railroad right of way, the fee to which belongs to the abutting owners, is presumed to take the fee to the centerline of the right of way. 12 Am.Jur.2d. *Boundaries* § 54. For example, in *Fleck v. Universal–Cyclops Steel Corporation,* 397 Pa. 648, 156 A.2d 832 (1959), the Pennsylvania Supreme Court held: "It is well settled that a grant of land bounded by or abutting on a public highway is presumed to carry the fee to the *center line* of such highway or easement." *Id.* 156 A.2d at 834 (emphasis added). The court additionally ruled that "[a] railroad is a highway within the meaning of this rule." *Id.*

The extension of the "highway presumption" to railroad rights of way has been deemed "appropriate" unless "the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not

5. The rule that a conveyance carried to the center line of a right of way has been characterized as "a rule of conveyance not a mere presumption" subject to rebuttal by parol evidence of the grantor's intent. 6 *Thompson on Real Property* § 3068.

convey the fee is clear." *The Roeder Company v. Burlington Northern, Inc.*, 105 Wash.2d 567, 716 P.2d 855, 861 (1986). The presumption has been upheld in favor of adjacent property grantees even where a deed description, by metes and bounds, extended the grant only to the boundary of the abandoned railroad right of way. *Vaughn v. Fitzgerald*, Ct.App.Okl., 511 P.2d 1148, 1151–1152 (1973).

A minority of jurisdictions appear to follow the rule that a grantee in a private conveyance of property bounded by or abutting a railroad right of way is not presumed to take the fee to the centerline of the right of way. The Chancellor adhered to this rule, relying upon the holding in *Stuart v. Fox*, 129 Me. 407, 152 A. 413 (1930). The Maine court rejected the "highway easement" presumption as not applicable to railroad rights of way because the railroad easement "is obviously vastly different from that in lands appropriated to the various kinds of other public ways" and the grantor of the easement is considered to derive no future benefit from the underlying land. *Id.*, 152 A. at 417 (quoting *Hayden v. Skillings*, 78 Me. 413, 6 A. 830, 831 (1886)).

In our view, the majority rule better serves the underlying rationale for the presumption as expressed in *duPont*—the avoidance of vexatious litigation "as a matter of policy." *duPont*, 187 A.2d at 423. As one court noted: "the existence of narrow strips of land distinct in ownership from the adjoining territory would create a prolific source of litigation." *Cuneo v. Champlin Refining Co.*, 178 Okl. 198, 62 P.2d 82 (1936). The fact that the origin of these narrow parcels lies in former highway or public use rather than in railroad use does not lessen their potential for controversy. Moreover, as is suggested in the present dispute, the conversion of abandoned railroad rights of way to vehicular roadways would impose upon the adjacent property owners the prospect of exposure to a more onerous and higher volume of traffic than that contemplated by a branch line railroad right of way. Without ownership of the underlying fee, an adjacent property owner would be required to accept a change in easement which places a differ-

ent burden upon the adjacent property. *Rio Bravo Oil Co. v. Weed*, 121 Tex. 427, 50 S.W.2d 1080 (1932).

As a practical matter when one acquires property adjacent to a right of way, the potential for abandonment of the right of way exists. The grantor, may, of course, reserve to himself that entitlement, analogous to a future interest, by expressing such intention in the grant. Where the grantor fails to do so, it seems unreasonable to presume that the grantor does not intend to convey title to the centerline of the easement. That result should not depend on the use to which that easement is dedicated.

In our view, the presumption that "unless the original grantors expressly [reserve] in themselves legal title to [an] alleyway, title is deemed to have been intended to pass to the respective grantees to the midline of the alley," *duPont*, 187 A.2d at 423, also applies to the conveyance of property bordering, or abutting on, a railroad right of way. In this dispute, the Court of Chancery erred as a matter of law in failing to apply the presumption that title passes to the midline of the adjoining railroad right of way.

The judgment of the Court of Chancery is REVERSED and the matter REMANDED for the purpose of entering a decree in petitioners' favor consistent with this opinion.