# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LEWES PUBLIC LIBRARY, INC.,    )
    )
  Plaintiff/Counterclaim Defendant,    )
    )
    v.    )    C.A. No. S19C-08-020 MHC
    )
NEW COVENANT PRESBYTERIAN    )
CHURCH, INC.,    )
    )
  Defendant/Counterclaim Plaintiff.    )

## OPINION AND ORDER

Submitted: December 9, 2021
Decided: March 23, 2022

Robert G. Gibbs, Esquire, R. Eric Hacker, Esquire, Morris James LLP, Georgetown, Delaware. *Attorneys for Plaintiff/Counterclaim Defendant Lewes Public Library, Inc.*

Daniel A. Griffith, Esquire, Whiteford Taylor & Preston LLC, Wilmington, Delaware. *Attorney for Defendant/Counterclaim Plaintiff New Covenant Presbyterian Church, Inc.*

**Conner, J.**

# I.     INTRODUCTION

This is the Court's decision following a one day bench trial on September 7, 2021, and post-trial briefing regarding a real property dispute between Plaintiff/Counterclaim Defendant Lewes Public Library, Inc. (the "Library") and Defendant/Counterclaim Plaintiff New Covenant Presbyterian Church, Inc. (the "Church"). The Library seeks a declaratory judgment pursuant to 10 *Del. C.* § 6502 that its rights have vested in certain real property located in Sussex County, Delaware. The Church holds a contingent future interest in the same real property and counterclaimed for a declaratory judgment that the Church's rights to the property vested and the interests of the Library were extinguished. Ultimately, the Court is asked to define the intent of a grantor of property. The Court has carefully considered the arguments, record, applicable statutes and relevant case law. For the following reasons, the Library's complaint for a declaratory judgment is **GRANTED.**

# II.     FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the Library began exploring locations for a new primary facility.[1] Based upon the Library's publicly announced need to relocate, Olde Towne Pointe,

---

[1] Trial Tr. 17:1–5; *see also* Pl.'s Post-Trial Opening Br. 1.

2

LLC (the "Grantor") offered to donate two parcels of land consisting of 2.61 acres located in Lewes, Delaware (the "Property") to the Library for use as the location of the Library's new main facility.[2]

In March 2012, the Library publicly announced the selection of 111 Adams Avenue in Lewes, Delaware as the site of its new main facility.[3] The following day, Ms. Beckie Healey ("Healey"), then-president of the Library Board of Commissioners, emailed Mr. Christian Hudson ("Hudson"), then-manager of the Grantor, to advise him of the Library's decision to select Adams Avenue as the site for the primary Library facility and to decline Hudson's offer to donate the Property.[4] Hudson emailed a response indicating that his family would still like to contribute financially to the Library.[5]

In December 2012, the Grantor recorded a deed (the "Deed") conditionally gifting the Property to the Library.[6] Hudson executed the Deed on behalf of the Grantor.[7] The Grantor and the Library did not communicate between the forementioned March 2012 email exchange and the recording of the Deed in December of that same year.[8] Under the Deed, the Library had ten years to use the

---

[2] Joint Ex. 4 at 3; Trial Tr. 31:2–8; Joint Ex. 8. The two parcels in question are now designated as Sussex County Tax Parcel 335-12.00-1.10 and Sussex County Tax Parcel 335-12.00-632.00.
[3] Trial Tr. 32:23–33:16; Joint Ex. 13.
[4] Pl.'s Ex. 1.
[5] *Id.*; Trial Tr. 39:6–20.
[6] Joint Ex. 7.
[7] *Id.* at 2.
[8] Trial Tr. 40:22–42:7, 69:2–71:4; Def.'s Post-Trial Opening Br. 10.

Property for a "library facility." If not, the Property would pass to a non-profit subsidiary of the Villages of Five Points Property Owners Association ("the Association") or to the Church.[9] Notably, the Deed did not define the term "library facility." The Deed states in pertinent part:

> PROVIDED, however, if the Grantee, Lewes Public Library, Inc. accepts the gift, but fails to use the Property for a library facility, within ten (10) years of the recording of this Deed, in that event, title to the Property shall be transferred to a wholly owned subsidiary of The Villages of Five Points Property Owners Association, Inc., which operates as a qualified U.S. Internal Revenue Code § 501(c)(3) organization . . . . If the Grantee refuses to accept the gift or rejects the gift of the Property and the First Subsequent Grantee does not qualify under 501(c)(3) on the date its executory interest would otherwise vest title in the First Subsequent Grantee, then in that event, title shall vest in New Covenant Presbyterian Church . . . .[10]

On January 25, 2013, the Library's Board of Commissioners voted to accept the donation of the Property[11] and soon thereafter it notified the IRS of the gift.[12] The Grantor ceased operating in 2015.[13] In June 2016, the Library opened the new primary library facility at 111 Adams Avenue, Lewes, Delaware.[14]

On June 26, 2018, the Sussex County Planning & Zoning Commission approved the Library's final site plan for construction of a patio with a book

---

[9] Joint Ex. 7.
[10] *Id.*
[11] Trial Tr. 42:8–44:18; Pl.'s Ex. 2.
[12] *See* Pl.'s Ex. 3.
[13] Pre-Tr. Stip. ¶2.
[14] Trial Tr. 45:15–17.

4

exchange kiosk and two benches (the "Structure") on the Property.[15] Before the Deed was recorded, the Property became subject to Sussex County Ordinances requiring i) that the Property be used for "community service uses," and ii) that the Grantor "maintain architectural and signage control of any facility" on the Property.[16] Sussex County's approval of the final site plan stated that the Structure qualified as a community service use under the applicable Sussex County Ordinance.[17] The Library also obtained a Sussex County building permit for construction of the Structure.[18]

In March 2019, the Library built the Structure on the Property.[19] Sussex County issued a Certificate of Occupancy/Compliance on March 14, 2019, which stated that the Structure conformed with the Building Code and Zoning Code for Sussex County.[20] The Structure holds approximately 100 books of various genres and reading levels at any given time.[21] Individuals associated with the Library regularly rotate the books available at the Structure and it was well used especially during the pandemic.[22]

---

[15] *Lewes Pub. Library, Inc. v. New Covenant Presbyterian Church, Inc.*, 2020 WL 4731146, at *1 (Del. Super. Aug. 14, 2020); Pl.'s Ex. 15; Joint Ex. 10.
[16] Joint Ex. 3 at 2.
[17] Joint Ex. 10.
[18] Joint Ex. 11.
[19] Trial Tr. 93:3–14, 145:13–17.
[20] Joint Ex. 12.
[21] Trial Tr. 160:16–63:9.
[22] *Id.*

On August 19, 2019, the Library asked this Court for a declaratory judgment that its interest in the Property vested.[23] The Church, being the Library's last remaining adversary,[24] counterclaimed for a declaratory judgment that the Church's rights to the Property vested and the interests of the Library extinguished.[25] Both parties moved for summary judgment.[26] The Court denied the Library's motion for summary judgment ruling that the intent of the Grantor needed to be ascertained and dismissed the Church's counterclaim without prejudice.[27]

At trial, both Parties introduced into evidence several newspaper articles regarding the Property dispute. Without objection, an April 2013 Cape Gazette article became part of the record.[28] The article was published more than one year after the Library publicly decided on Adams Avenue as the site for the new main library facility. In the context of discussing the Property dispute, the article quoted Hudson as saying, "I think the property owners

---

[23] *See* Compl. ¶ 82.
[24] *See Lewes Pub. Library, Inc. v. New Covenant Presbyterian Church, Inc.*, Del. Super., C.A. No. S19C-08-020, Conner, J. (Apr. 30, 2021) (ORDER).
[25] *See* Def.'s Answ. to Pl's Compl., Cross-cl. & Countercl.
[26] *Lewes Pub. Library, Inc.*, 2020 WL 4731146, at *1.
[27] *Id.* at *3.
[28] Pl's Ex. 16; Trial Tr. 198:8–13; 228:14–29:5; *see generally Beeks v. State*, 129 A.3d 231 (Del. 2015) (TABLE).

association is mad because they didn't get the property, but we wanted the library to get it."[29]

## III.  PARTY CONTENTIONS

The Library and the Church have argued exhaustively over whether the use of the term "library facility" in the Deed meant that the Grantor intended for a fully functioning library to be built on the Property. Both parties have highlighted certain attributes of the Structure in efforts to bolster their arguments as to whether the Structure is a library facility. The Library has emphasized that the Structure has been used extensively by community members and refers to it as the "Lending Library."[30] Conversely, the Church has focused on the fact that the Structure takes up less than one percent of the Property and prefers calling the Structure a "little gazebo."[31]

The Library contends that it accepted the Grantor's offer to gift the Property when the Library's Board voted to accept the gift and the Library notified the IRS of the gifted Property. The Library further contends that the Structure falls within the broad definition of a "library facility" as specified in the Deed. Thus, according

---

[29] Pl's Ex. 16.
[30] Trial Tr. 10:7–9; *see also* Pl.'s Post-Trial Answering Br. 1, 12.
[31] Trial Tr. 22:19–23:2; *see also* Def.'s Post-Trial Opening Br. 14, 26.

to the Library, title has fully vested in the Library because the Library has satisfied both conditions of the Deed.

The Church argues that the intent of the Grantor was for the Library to construct a full-fledged library on the Property, and since the Library failed to do so it has not fulfilled the Deed restrictions. The Church also raises other contentions including that the Library is unable to take title to the Property because the Structure exists in violation of restrictions imposed by Sussex County Ordinances and by the Five Point Property Owners Association. The Court is dismissing these arguments since neither Sussex County nor the Association are parties to the litigation at this time.

## IV. STANDARD OF REVIEW

Ten *Del. C.* § 6501 states in relevant part, "[e]xcept where the Constitution of this State provides otherwise, courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. . . ."[32] The Superior Court Civil Rules as well as case law make clear that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief . . . ."[33]

---

[32] 10 *Del. C.* § 6512 (providing that, "[t]his chapter . . . is to be liberally construed and administered.").
[33] Super. Ct. Civ. R. 57; *Clemente v. Greyhound Corp.*, 155 A.2d 316, 321 (Del. Super. 1959).

8

For a declaratory judgment to be appropriate:

1) the controversy must involve a claim of right or other legal interest of the party seeking declaratory relief;

2) the claim of right or other legal interest must be asserted against one who has an interest in contesting the claim;

3) the conflicting interests must be real and adverse; and

4) the issue must be ripe for judicial determination. [34]

"Superior Court has jurisdiction in a declaratory judgment action only if it would otherwise have subject matter jurisdiction in the absence of the declaratory judgment action."[35] "Normally actions to determine title to land are actions at law, and thus within this Court's jurisdiction."[36] Specifically, the Delaware Supreme Court has acknowledged this Court's role in construing terms in the context of deed restrictions.[37]

---

[34] *Weiner v. Selective Way Ins. Co.*, 793 A.2d 434, 439 (Del. Super. 2002) (citing *Rollins Int'l Inc. v. International Hydronics Corp.,* 303 A.2d 660, 662 (Del. 1973)).
[35] *Burris v. Cross*, 583 A.2d 1364, 1377 (Del. Super. 1990).
[36] *Id.*; *see also Walker v. Five N. Corp.*, 2007 WL 2473278, at *3 (Del. Super. Aug. 31, 2007); *Wolfman v. Jablonski*, 99 A.2d 494, 497 (Del. Ch. 1953) ("This court, generally speaking, will not decide title to real estate.").
[37] *See Seaford Golf & Country Club v. E.I. duPont de Nemours & Co.*, 925 A.2d 1255, 1261 (Del. 2007).

## V. DISCUSSION

### A. Declaratory Judgment is the Proper Vehicle to determine the Library's Claim

The Library's claim clearly meets the four above-mentioned prerequisites to pursuing a declaratory judgment under 10 *Del. C.* § 6501. Both parties in this case claim an interest in the Property. The action involves their rights and legal relations. Those interests are real and adverse. And finally, this matter is ripe for judicial determination.[38]

The Court has subject matter jurisdiction in the present case. This is not an action to remove cloud from title,[39] reform or cancel a deed. Rather, the Library asks the Court to interpret a contract in hopes of a declaration that it is the rightful owner of the Property. This Court has jurisdiction to interpret a contract independent of the Delaware Declaratory Judgment Act.[40]

---

[38] *See XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (quoting *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989).

[39] *See State v. Williams*, 1981 WL 96487, at *1 (Del. Ch. June 8, 1981) ("A cloud upon title has been defined as a title or encumbrance, apparently valid on its face, but which is in fact invalid. It is something which, nothing else being shown, constitutes an encumbrance upon or a defect in title.").

[40] *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Rhone-Poulenc Basic Chemicals Co.*, 1992 WL 22690, at *8 (Del. Super. Jan. 16, 1992), *aff'd sub nom. Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1198 (Del. 1992).

## B.     Acceptance

As a preliminary matter, it is clear that the Library accepted the donation of Property under the conditions of the Deed. The first donation offer was terminated by Healey's March 2012 email.[41] The filing of the Deed in December 2012 constituted a separate offer that was accepted by the Library when the Board of Commissioners publicly voted to accept the gift. [42]

## C.     The Term "Library Facility" is Ambiguous

Sussex County has confirmed that the Structure complies with applicable County Ordinances. The Court turns now to the remaining Deed restrictions. "The fundamental rule in construing a deed is to ascertain and give effect to the intent of the parties as reflected in the language they selected."[43] It is undisputed that the Structure was built within ten years as required by the Deed. What is in debate is whether the Structure is a "library facility." When the meaning of a disputed term is undefined by the deed, courts turn to dictionaries for direction in determining the plain meaning of the term.[44] When consideration of dictionary definitions fail to

---

[41] *See Friel v. Jones*, 206 A.2d 232, 233–34 (Del. Ch. 1964); Restatement (Second) of Contracts § 38(1) (1981) ("An offeree's power of acceptance is terminated by his rejection of the offer, unless the offeror has manifested a contrary intention.").

[42] *See Shockley v. Halbig*, 75 A.2d 512, 513 (Del. Ch. 1950) ("being beneficial, the acceptance of [a] gift will be presumed."); *see also* Restatement (Second) of Contracts § 65 cmt. a (1981).

[43] *Smith v. Smith*, 622 A.2d 642, 646 (Del. 1993) (citing *Rohner v. Niemann*, 380 A.2d 549, 552 (Del. 1977)).

[44] *Seaford Golf & Country Club*, 925 A.2d at 1261.

"yield a uniform, single, plain meaning . . . ." the disputed term is ambiguous, and courts must then turn to the intent of the donor or grantor.[45] This concept was articulated in *Seaford Golf & Country Club v. E.I. duPont de Nemours & Co.*[46]

In that case, the Superior Court was tasked with determining whether the meaning of the term "plant," which was undefined by the deed, was limited to a manufacturing plant, or included the land on which the manufacturing plant was located.[47] On appeal, the Supreme Court stated that in such circumstances, courts are to turn to dictionaries for guidance in determining the plain meaning of an undefined term.[48] The various dictionary definitions cited by counsel failed to "yield a uniform, single, plain meaning; that is, dictionary definitions [were] found to support either view."[49] As a result, the term was ambiguous and the Supreme Court ruled the next step was to determine the donor's intent.[50]

The Court recognizes that through the course of time, libraries and their uses have changed. The structure built in this case is a relatively new concept but the traditional operation of providing books to the public still exists at this structure. However, "library facility" is undefined by the Deed. Thus, the Court must first look to dictionary definitions for the plain meaning of the term. Unsurprisingly, the

---

[45] *Id*. at 1262.
[46] *Id.* at 1264.
[47] *Id.* at 1256.
[48] *Id.* at 1261.
[49] *Id*. at 1264.
[50] *Id*.

12

Library cites definitions broadly construing the term while the Church prefers narrower definitions.[51] The term is susceptible to both interpretations,[52] which means that there is no established plain meaning of the term. Consequently, the term is ambiguous and the Court must consider the intent of the Grantor.

### D. Intent

If the answer to whether the Grantor intended for a fully functioning library to be built on the Property by use of the term "library facility" is *no*, the Library's interest in the Property has vested. Unfortunately, the Court does not have the benefit of sworn testimony of any representative of the Grantor.

In *Gibson v. Main* the Court was tasked with determining what a grantor meant by the word "garages."[53] The restrictive deed prohibited the purchaser of land from building, among other things, "any stores or garages upon said lands."[54] Garages could, of course, mean garages of every kind.[55] The Court reasoned that the underlying purpose for the restriction was to make the conveyed lands "safe and desirable for residential purposes."[56] The Grantor, therefore, likely did not intend to

---

[51] Pl. Post-Trial Opening Br. 18–19; Def.'s Post-Trial Opening Br. 23–25.
[52] *Lewes Pub. Library, Inc*, 2020 WL 4731146, at *3, *rearg. den.*, 2020 WL 5530339 (Del. Super. Sept. 14, 2020).

[53] *Gibson v. Main*, 129 A. 259, 262 (Del. 1925).
[54] *Id*. at 260.
[55] *Id*.
[56] *Id*.

prohibit private garages that were to be used in connection with a residence.[57] The Court found that garages are so essential to the comfort and convenience of a home, to disallow them would be inconsistent with the grantor's purpose.[58] The Court went on to hold that the defendant was entitled to build a garage to use as a bungalow.[59]

In the case at hand, the Deed clearly evinces that the Property was intended to be used for charitable purposes. The Library was one of three charitable organizations listed in the Deed, the others being the Church and a 501(c)(3) subsidiary of the Association. Moreover, it is clear that the Grantor was aware that the Library's new primary facility would be built at a location other than the Property. With this information at hand, the Grantor still deeded the land to the Library and Hudson stated, "we wanted the Library to get [the Property]."[60]

While it is possible that the Grantor hoped the Library would change course and build a fully functioning library on the Property, if the Grantor wanted the term "library facility" to be construed narrowly it could have expressed that intent, but it did not. The Delaware Supreme Court has warned that "an interpreting court should be most chary about implying contractual terms when the contract could easily have

---

[57] *Id.*
[58] *Id.*
[59] *Id.* at 261.
[60] Pl's Ex. 16.

14

been drafted to expressly provide for such terms, limitations or conditions."[61] If the Grantor intended this Property to be used for a specific type of library facility, then a more exclusive provision should have appeared in the Deed.

## VI.   CONCLUSION

The Library accepted the Property and used it for a library facility within the requisite ten year period. To take the Property away now would be inconsistent with the Grantor's intentions. Accordingly, the Court finds the Library's interest in the Property has vested.

**IT IS SO ORDERED.**

_/s/ Mark H. Conner_
Mark H. Conner, Judge

cc: Prothonotary

---

[61] *Murfey v. WHC Ventures, LLC*, 236 A.3d 337, 357 (Del. 2020) (quoting *Nationwide Emerging Managers, LLC v. Northpointe Hldgs.*, LLC, 112 A.3d 878, 897 (Del. 2015).