This case presents an issue that we believe is one of first impression, the ownership of a railroad bed upon the termination of a right-of-way *Page 162 
that was granted more than 100 years ago.
The petitioners, Nathaniel and Florence Jones, and the respondent, James L. Lane, own property that abuts the disputed tract, which, prior to this dispute, was part of a railroad company's right-of-way. During the mid-1980s, the successor in interest of the original grantee ceased operation and abandoned its interest in and to the right-of-way.
The material facts are undisputed or are contained in various deeds of conveyances. They show that in 1870, the subject property, located in southeast Montgomery, was part of a tract consisting of two whole sections[1] that were then owned by Jason G. Jones. The petitioners and the respondent in this case each derived their interest in the property on either side of the right-of-way through mesne conveyances from Jason G. Jones, the original grantor of the right-of-way.[2]
On or about March 21, 1870, Jason G. Jones executed and delivered to the Montgomery Eufaula Railroad Company an instrument creating a right-of-way over and across his land, for the construction of a railroad; the right-of-way extended 100 feet on each side from the center of the railway. The right-of-way instrument recites:
 "To have and to hold the said right-of-way to the said company and their assigns for the use and benefit of said road forever. Upon conditions nevertheless, and it is expressly agreed and understood that should the said road not be located and built on or along said tract of land above intentioned, then all benefit from this deed shall cease, determine and become void."
It is undisputed that the grantee of the right-of-way did, in fact, erect its tracks and that the railroad company, or its successors and assigns, did use the right-of-way for more than 100 years, and until the mid-1980s, when the Central of Georgia Railroad Company, the successor in interest, ceased operation of the track and abandoned its interest in and to the right-of-way.
Upon the death of Jason G. Jones, his lands descended by will and by intestate succession. The first conveyance we find in the record that makes any reference to a right-of-way was a deed from W.G. Jones and his wife to Jesse Lee Jones, the description reading as follows:
 "South 1/2 of the NW 1/4; ten (10) acres south of the railroad in the NE 1/4 of the NW 1/4; thirty-five (35) acres south of the railroad in the NW 1/4 of the NW 1/4, all in Section seven (7); township fifteen (15), range nineteen (19); also the NE 1/4 of the SE 1/4 and the SE 1/4 of the NE 1/4 of Section twelve (12); township fifteen (15); range eighteen (18)."
The record contains no warranty deeds in Lane's chain of title that make reference to the railroad right-of-way, but in a trial court brief filed by Lane, which is in the record, there is a statement that "[t]he [trial judge] examined the deeds to the lands which adjoined the abandoned right-of-way on the north side and on the south side and found that the deeds either used the railroad right-of-way boundary as a property line, or conveyed a platted lot which abutted the railroad right-of-way."
This case was commenced when Lane filed a complaint in the Circuit Court of Montgomery County, requesting a judgment declaring that Nathaniel and Florence Jones owned no interest in the abandoned railroad right-of-way. Lane contended that the original owner/grantor, Jason G. Jones, had reserved unto himself the land subject to the railroad right-of-way and that when the railroad abandoned the right-of-way in the mid-1980s it reverted to the heirs of the original owner/grantor. Lane did not, and does not, claim ownership of the right-of-way as an adjoining landowner, but claims it because he had acquired an interest in the right-of-way as a grantee from one of the heirs of the original owner/grantor. Lane, therefore, also requested that the trial court determine that the property used as the right-of-way could not be equitably divided among the joint owners and tenants in common and that it is in the best interest of all parties that the *Page 163 
property be sold and the proceeds of the sale divided and distributed among the joint owners.
The trial judge, after a nonjury trial, issued an order providing in pertinent part:
 "Nathaniel Bruce Jones and Florence C. Jones own no interest in the property in question, i.e., that portion of the abandoned railroad right-of-way easement which lies adjacent to their property and to which they have filed a claim of ownership.
 "Upon consideration of this matter, the court is of the opinion that the Plaintiff [Lane] is entitled to the relief prayed for in the complaint."
The Joneses filed a motion for a new trial, which was denied. They then appealed to the Court of Civil Appeals; that court, applying the ore tenus rule of review, affirmed the judgment of the trial court. Jones v. Lane, 669 So.2d 159 (Ala.Civ.App. 1994). That court stated that the trial court's order was supported by the following evidence:
 "(1) the testimony of a historian hired by Lane to locate the heirs of the original owner/grantor; (2) the testimony of Nathaniel Bruce Jones, who admitted that the survey and legal description to the property which he purchased show that his north property line is the south right-of-way line of the railroad's easement and that when he purchased his property, he did not think that he was acquiring an ownership in the right-of-way; and (3) the deeds themselves."
Jones v. Lane, 669 So.2d at 161.
The Joneses contended in the trial court and in the Court of Civil Appeals, and they contend in this Court, that the material facts are undisputed and that there is a presumption in Alabama that upon the abandonment of a railroad right-of-way the owners of abutting land acquire ownership to the center line of the land subject to the right-of-way, unless it is clear from the conveyances that the land subject to the right-of-way was specifically reserved by the grantor. They contend, therefore, that the Court of Civil Appeals and the trial court erred in holding that there was a factual dispute that the trial court resolved in favor of Lane. We agree with the Joneses that the material facts in this case are undisputed and that only a question of law is presented. Under our law, "[w]here the evidence before the trial court is undisputed . . . the ore tenus rule is inapplicable and the appellate court shall sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to the facts." Justice v. Arab Lumber Supply, Inc.,533 So.2d 538, 542 (Ala. 1988), citing Stiles v. Brown,380 So.2d 792 (Ala. 1980); Abel v. Forrest Realty, Inc., 484 So.2d 1069
(Ala. 1986); Stinson v. Stinson, 494 So.2d 435 (Ala.Civ.App. 1986). The parties here stipulated that the chain of title was derived from a common grantor and that the common grantor conveyed the right-of-way to the railroad company. It is also apparent that the original instrument conveying the right-of-way contains no language creating a right of reversion in the grantor should the grantee railroad cease operation of the track.
We must conclude that there is no dispute as to any of the material facts that would call for the application of the ore tenus rule; therefore, we will review the evidence de novo.
As we see it, the issue presented is: Who holds the legal title to the land subject to the railroad right-of-way now that the right-of-way has been abandoned? The Joneses argue that this Court should apply the general rule of law, discussed inStandard Oil Co. v. Milner, 275 Ala. 104, 152 So.2d 431 (1962), but not applied in that case, that a private conveyance of land bounded by or abutting on a highway or railroad right-of-way is presumed to pass the fee to the center line thereof. InStandard Oil v. Milner, this Court said:
 "It is a general rule that a private conveyance of land bounded by or abutting on a highway or a railroad right-of-way, the fee to which belongs to the abutting owner, is presumed to pass the fee to the right-of-way to the center line thereof, and under certain circumstances to the opposite side. 8 Am.Jur., Boundaries, § 49, p. 781; 11 C.J.S. Boundaries § 45, pp. 594-596; Tiffany, The Law of Real Property, Vol. 4, § 996, p. 113, n. 93; Annotations: 'Description *Page 164 with reference to highway as conveying title to center or side of highway,' 2 A.L.R. 6, 47 A.L.R. 1276, 123 A.L.R. 542, 49 A.L.R.2d 982; 'Boundary under conveyance of land bordering on railroad right of way,' 85 A.L.R. 404. This rule is based on a presumption that the grantor intended to convey such fee along with and as a part of the conveyance of the abutting land, generally on the theory that he did not intend to retain a narrow strip of land which could hardly be of use or value except to the owner of the adjoining land."
275 Ala. at 110, 152 So.2d at 436.
This general rule of law seems to have common law origins. Sir John Coleridge, a former Judge of the Court of Queen's Bench, speaking for the Privy Council in Lord v. Sydney, 12 Moore 473, 14 Eng.Rep. 991, 1000 (P.C. 1859), wrote: "Mr. Chancellor Kent, in his Commentaries (Ed. 1840), part 6 Lect. 52, p. 438, writes thus: — '. . . [I]t may be considered as a general rule, that a grant of land bounded upon a highway or river, carries the fee on the highway or river to the centre of it, provided the grantor at the time owned to the centre, andthere be no words or specific description to show a contraryintent.' " (Emphasis added.) The general rule is believed to be based on the maxim usque ad filum aquae or viae or "up to the middle of the stream or road." Black's Law Dictionary 1544 (6th. ed. 1990). This general rule is also recognized by American commentators: "Where roadbeds or railroad easements are terminated, ownership of the underlying fee usually is presumed to vest in the adjoining landowners, with each taking to the center line of the easement, unless there is evidence that the easement was taken from property on one side more than from property on the other." 7 Thompson on Real Property,Ownership of Roadbeds or Railroad Beds Upon Termination of anEasement § 60.08(d)(1) (Thomas ed. 1994). "The principle of the rule that the grantee in a private conveyance of land bounded by, or abutting on, a highway the fee to which belongs to the abutting owners is presumed to take the fee to the highway to the center line thereof has generally been regarded as applicable to cases of conveyances bounded by, or abutting on, a railroad right of way." 12 Am.Jur.2d Boundaries § 54 (1964) (footnotes omitted).
Although this Court, in Standard Oil, held that the grantor never intended to convey the fee to the land subject to the right-of-way in that case, it seems apparent in that case that this Court, based on the facts of that case, determined that when the grantor conveyed land south of a railroad right-of-way by a deed that described the tract conveyed as running to the southern line of the right-of-way and thence in a northeasterly direction along the right-of-way line, did not intend to pass any title as to land within the right-of-way. In that case, this Court found that the intention of the grantor could be ascertained without benefit of the presumption.
The Supreme Court of Delaware recently addressed the issue we have here, whether a deed conveying property abutting a railroad right-of-way should be presumed to convey to the center of the right-of-way where the grantor owns the fee that is subject to the right-of-way and does not clearly and expressly reserve a fee interest in the deed. Smith v. Smith,622 A.2d 642 (Del. 1993). That Court adopted the majority rule, writing: "A majority of the jurisdictions which have considered this issue appear to have adopted the rule that a grantee in a private conveyance of property bounded by or abutting a railroad right of way, the fee to which belongs to the abutting owners, is presumed to take the fee to the centerline of the right of way. 12 Am.Jur.2d. Boundaries § 54." 622 A.2d at 647. The Delaware Supreme Court cited in support of its decisionFleck v. Universal-Cyclops Steel Corp., 397 Pa. 648,156 A.2d 832 (1959), which had held: "It is well settled that a grant of land bounded by or abutting on a public highway is presumed to carry the fee to the center line of such highway or easement."397 Pa. at 650, 156 A.2d at 834. The Pennsylvania court further ruled that "[a] railroad is a highway within the meaning of this rule." Id. The extension of the "highway presumption" to railroad rights-of-way has been deemed "appropriate" unless "the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is *Page 165 
clear." Roeder Co. v. Burlington Northern, Inc., 105 Wn.2d 567,575, 716 P.2d 855, 861 (1986). "The presumption has been upheld in favor of adjacent property grantees even where a deed description, by metes and bounds, extended the grant only to the boundary of the abandoned railroad right of way." Smith,622 A.2d at 648; see Vaughn v. Fitzgerald, 511 P.2d 1148,1151-52 (Okla.App. 1973). There are minority views on the application of the presumption, especially as regards abandoned railroad beds. The Maine Supreme Court, in Stuart v. Fox,129 Me. 407, 152 A. 413 (1930), rejected the "highway easement" presumption as not applicable to railroad rights-of-way because the railroad easement "is obviously vastly different from that in lands appropriated to the various kinds of other public ways" and the grantor of the right-of-way is considered to derive no future benefit from the underlying land.129 Me. at ___, 152 A. at 417 (quoting Hayden v. Skillings, 78 Me. 413,6 A. 830, 831 (1886)).
The Delaware Court, in Smith v. Smith, in adopting the majority rule, reasoned:
 "In our view, the majority rule better serves the underlying rationale for the presumption as expressed in duPont [v. American Life Insurance Co., 41 Del. Ch. 33, 187 A.2d 421 (1963)] — the avoidance of vexatious litigation 'as a matter of policy.' duPont, 187 A.2d at 423. As one court noted: 'the existence of narrow strips of land distinct in ownership from the adjoining territory would create a prolific source of litigation.' Cuneo v. Champlin Refining Co., 178 Okla. 198, 62 P.2d 82 (1936). The fact that the origin of these narrow parcels lies in former highway or public use rather than in railroad use does not lessen their potential for controversy. Moreover, as is suggested in the present dispute, the conversion of abandoned railroad rights of way to vehicular roadways would impose upon the adjacent property owners the prospect of exposure to a more onerous and higher volume of traffic than that contemplated by a branch line railroad right of way. Without ownership of the underlying fee, an adjacent property owner would be required to accept a change in easement which places a different burden upon the adjacent property. Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080 (1932).
 "As a practical matter when one acquires property adjacent to a right of way, the potential for abandonment of the right of way exists. The grantor, may, of course, reserve to himself that entitlement, analogous to a future interest, by expressing such intention in the grant. Where the grantor fails to do so, it seems unreasonable to presume that the grantor does not intend to convey title to the centerline of the easement. That result should not depend on the use to which that easement is dedicated.
 "In our view, the presumption that 'unless the original grantors expressly [reserve] in themselves legal title to [an] alleyway, title is deemed to have been intended to pass to the respective grantees to the midline of the alley,' duPont, 187 A.2d at 423, also applies to the conveyance of property bordering, or abutting on, a railroad right of way."
Smith, 622 A.2d at 648.
We agree with the reasoning of the Supreme Court of Delaware, and hereby adopt the majority rule, that unless the original grantor of the abandoned right-of-way has, when making a later conveyance, expressly reserved legal title to the land subject to the right-of-way, the grantor is presumed to have intended to pass title to the abutting landowners to the center line of the right-of-way. In applying this rule to the present facts, we hold that the Court of Civil Appeals and the trial court erred. When the original grantor, Jason G. Jones, conveyed land to these parties' predecessors in title, he did not expressly reserve to himself legal title to the land subject to the right-of-way in the event the right-of-way was abandoned. Accordingly, the legal title is deemed to have passed to these parties' predecessors, whose ownership extended to the center line of the right-of-way in case of its abandonment.
Based on the foregoing, the judgment of the Court of Civil Appeals is reversed and *Page 166 
the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
ALMON, SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
[1] Sections 6 and 7, Township 15 North, Range 19 East, Montgomery County, Alabama.
[2] The petitioners, Nathaniel and Florence Jones, are not related to Jason G. Jones.