2013 CO 54

**Rodney ASMUSSEN and Linda Asmussen, Husband and Wife, For Themselves and As Representatives of a Class of Similarly Situated Persons, Plaintiffs**

**v.**

**UNITED STATES, Defendant.**

**Supreme Court Case No. 12SA96**

Supreme Court of Colorado, En Banc.

July 1, 2013

Attorneys for Plaintiffs: Lathrop & Gage, LLP, Phillip S. Lorenzo, James E. Dallner, Denver, Colorado, Baker Sterchi Cowden & Rice, LLC, Thomas S. Stewart Elizabeth McCulley Kansas City, Missouri

Attorneys for Defendant: United States Department of Justice Nicholas A. DiMascio Washington, D.C.

Justice MÁRQUEZ delivered the Opinion of the Court.

¶ 1 Pursuant to C.A.R. 21.1, we agreed to answer a certified question of law posed to us by the United States Court of Federal Claims. The question arises out of a class action lawsuit asserting a Fifth Amendment takings claim against the federal government. Plaintiffs are landowners in Weld County who own property abutting a former railroad right-of-way. The United States authorized the former railroad right-of-way to be used as a recreational trail pursuant to the National Trails System Act, 16 U.S.C. §§ 1241–1251 (2006) ("Rails–to–Trails Act"). The issue before the United States Court of Federal Claims is whether, by authorizing recreational trail use for the right-of-way, the United States effected a taking of property for which Plaintiffs should receive just compensation. *See Preseault v. United States,* 100 F.3d 1525, 1552 (Fed.Cir.1996) (holding that a taking occurs when, under the Rails–to–Trails Act, reversionary interests in property are eliminated by converting a railroad right-of-way to trail use).

¶ 2 To determine whether a compensable Fifth Amendment taking has occurred, the Court of Federal Claims must first determine whether each Plaintiff held a vested property interest in the right-of-way at the time of the alleged taking. Although it is undisputed that Plaintiffs own property adjacent to the right-of-way, the parties dispute whether Plaintiffs have established that they own the land underlying the right-of-way and are, therefore, entitled to compensation. According to the certification order, the Plaintiffs acquired their respective properties following multiple real estate transactions that span more than 100 years. Plaintiffs nevertheless allege that because they own property abutting the railroad right-of-way, it is presumed that they own a reversionary interest in the land to the centerline of the right-of-way, and the United States must compensate them for extinguishing that reversionary interest when it authorized recreational trail use of the former railroad right-of-way.

¶ 3 At common law, a conveyance of land abutting a road or highway is presumed to carry title to the center of that roadway to the extent the grantor has an interest therein, unless a contrary intent appears on the face of the conveyance. This general rule is known as the "centerline presumption." Plaintiffs contend that this general rule functions as an evidentiary presumption, and it applies with equal force in the context of railroad rights-of-way in Colorado. Thus, Plaintiffs argue, because they own land abutting the railroad right-of-way, under the centerline presumption it is presumed that Plaintiffs own fee title to the centerline of the right-of-way, and it is the United States' burden to produce evidence to rebut that presumption.

¶ 4 The United States argues that the centerline presumption does not apply in the context of railroad rights-of-way, and even if it does, the centerline presumption is not an evidentiary presumption to be rebutted, but rather, is a common law rule of conveyance that applies only where an adjacent landowner presents evidence that its title derives from the owner of the land underlying the right-of-way. The United States contends that the common law does not vest ownership in adjacent landowners by the mere fact of their adjacency. Rather, a grantor's conveyance of land adjacent to a right-of-way presumptively carries title to the centerline of the right-of-way only if the grantor owned the land underlying the right-of-way. Thus, the United States contends, establishing mere ownership in the land *abutting* the right-of-way, without more, is insufficient to establish fee title in the land *underlying* the right-of-way. Rather, the landowner must establish that he or she received the abutting property from the owner of the fee underlying the right-of-way in order to claim presumptive ownership to the centerline of the right-of-way. The United States argues that, because Plaintiffs bear the burden of proving ownership of the land underlying the right-of-way before the United States must compensate them for the alleged taking, Plaintiffs must provide their chains of title to close the evidentiary gap between the original landowners' conveyances to the railroad in the early 1900s and Plaintiffs' eventual acquisition of the abutting properties.

¶ 5 The Court of Federal Claims' certified question asks:

> When a railroad obtains an easement for a railroad right-of-way through deed or condemnation, does Colorado law presume that, if the railroad later abandons the easement, the landowners on each side of the railroad right-of-way at the time of abandonment own the land from their respective property lines abutting the right-of-way to the centerline of the right-of-way.

¶ 6 We agree with the United States that the centerline presumption is a common law rule of conveyance. The rule is meant to effectuate the presumed intent of the grant-

or, and it applies only where the grantor owns the fee underlying the right-of-way. With this purpose in mind, we hold that the centerline presumption applies to railroad rights-of-way in Colorado. However, we also hold that the centerline presumption is not applicable where the landowner does not adduce evidence proving that his or her title derives from the owner of the land underlying the right-of-way. We hold that a landowner is not presumed to own fee title to an abandoned railroad right-of-way merely because the landowner's property abuts the right-of-way. Rather, to claim presumptive ownership to the centerline of the right-of-way under the common law centerline presumption, the adjacent landowner must produce evidence that his or her title derives from the owner of the land underlying the right-of-way. Accordingly, we answer the certified question in the negative.

## I. Facts and Procedural History

¶ 7 In 1901, the Great Western Railway Company constructed a railroad line across Weld County, Colorado, which included an 11.7–mile stretch of railroad corridor running between Windsor and Eaton, Colorado, known as the Eaton Subdivision. The Great Western Railway Company acquired easements for the railroad right-of-way from individual landowners through deed or condemnation. In 2003, the Great Western Railway of Colorado, the successor in interest to the Great Western Railway Company, filed a petition to abandon the Eaton Subdivision.

¶ 8 The Rails–to–Trails Act includes a mechanism, known as railbanking, for a railway to discontinue its use of a rail line without abandoning the right-of-way. *See* 16 U.S.C. § 1247(d) (2006). The United States Congress enacted this mechanism out of concern that the national rail system was becoming disintegrated as railroad rights-of-way were being abandoned. *Preseault v. I.C.C.*, 494 U.S. 1, 5, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990). Railbanking authorizes the interim use of a right-of-way for recreational trails, thereby preventing any reversionary interest in the right-of-way from vesting and preserving the possibility of future railroad use. 16 U.S.C. § 1247(d). The United States De-

partment of Transportation's Surface Transportation Board ("STB") oversees the railbanking process. Once a railroad begins the process to abandon its right-of-way, a potential trail sponsor may file a request that the STB issue a notice of interim trail use ("NITU"), which stays the effective date of the abandonment to allow the railroad and the trail sponsor to negotiate a railbanking and interim trail use agreement. 49 C.F.R. § 1152.29(d)(1) (2012). If the parties reach an agreement, the NITU automatically authorizes the interim trail use and the trail sponsor assumes management of the right-of-way, subject to reactivation for future rail service. *Caldwell v. United States*, 57 Fed. Cl. 193, 195 (2003).

¶ 9 In 2004, the STB issued a NITU regarding Great Western Railway of Colorado's right-of-way. In 2006, the Great Western Trail Authority, a government entity formed by the municipalities of Eaton, Severance, and Windsor, Colorado, and the Great Western Railway of Colorado reached a donative agreement and signed a donative quitclaim deed and bill of sale. The Great Western Trail Authority thereby assumed management of the right-of-way for interim trail use, subject to the future restoration of rail service.

¶ 10 Plaintiffs, including Rodney and Linda Asmussen, are some, but not all, of the landowners whose property abuts the railroad right-of-way.[1] In 2009, Plaintiffs filed a complaint against the United States in the United States Court of Federal Claims, alleging that when the STB issued a NITU, the federal government denied Plaintiffs their reversionary interests in the right-of-way located on their properties. Under Plaintiffs' theory, converting the right-of-way to trail use under the Rails–to–Trails Act constituted a Fifth Amendment taking.

¶ 11 The parties stipulated that Plaintiffs own property abutting the right-of-way. The

parties also stipulated that, in all but one instance, the original landowners only conveyed easements to the railroad, not fee title. The parties dispute, however, the scope of the easements and who now owns the land underlying the right-of-way. Plaintiffs provided to the Court of Federal Claims and the United States copies of the instruments that created the railroad's interest in the railroad line ("source deeds") and copies of the deeds under which Plaintiffs obtained their interests in the abutting properties. Plaintiffs did not provide the Court of Federal Claims with the multiple deeds and other instruments establishing the chains of title for their properties.

¶ 12 Plaintiffs and the United States filed cross-motions for summary judgment. Relevant here, the United States moved for summary judgment on the basis that Plaintiffs failed to present sufficient evidence of ownership in the land underlying the right-of-way. The United States argued that Plaintiffs' failure to produce their chains of title linking the original conveyances to the railroad in the early 1900s and Plaintiffs' acquisition of the abutting land "constitutes a failure of proof on the threshold element of their takings claim." Plaintiffs responded that Colorado law presumes that adjacent landowners own to the centerline of the right-of-way, and it is the United States' burden to rebut that presumption.

¶ 13 The Court of Federal Claims concluded that Colorado law is not clear as to whether a presumption applies that landowners abutting a railroad right-of-way own the underlying land to the centerline of the right-of-way. Accordingly, the Court of Federal Claims certified this question to this court. We accepted jurisdiction.[2]

## II. Analysis

¶ 14 The issue before this court is whether Colorado law presumes that a landowner

---

1. Plaintiffs filed their class certification after the complaint was filed. The United States stipulated to the class certification, and the Court of Federal Claims granted Plaintiffs' motion to certify the class action on September 18, 2009.

2. C.A.R. 21.1 provides that this court may answer questions of law certified to us by the United States Court of Claims, the predecessor to the

Court of Federal Claims. Because C.A.R. 21.1 became effective before the Court of Claims was reorganized into the United States Court of Appeals for the Federal Circuit and the Court of Federal Claims, we construe C.A.R. 21.1 to grant this court the power to answer questions of law certified to us by the Court of Federal Claims.

owns a property interest in land to the centerline of a former railroad right-of-way merely because the landowner's property abuts the former right-of-way. To resolve the certified question before us, we first clarify that the centerline presumption is a common law rule of conveyance intended to effectuate the presumed intent of the grantor, but the presumption applies only where the grantor owns the fee underlying the right-of-way. We then conclude that the centerline presumption applies to conveyances of land adjacent to a railroad in the same manner as to conveyances of land adjacent to a roadway. Finally, we determine that the centerline presumption does not apply absent evidence that the landowner's title derives from a grantor who owned the land underlying the right-of-way. Therefore, we hold that, to claim presumptive ownership to the centerline of the railroad right-of-way under the common law centerline presumption, the adjacent landowner must produce evidence that his or her title derives from the owner of the land underlying the right-of-way.

## A. Purpose of the Centerline Presumption

■ ¶ 15 At common law, the conveyance of land abutting a highway or street is presumed to carry title to the center of that roadway to the extent that the grantor has any interest therein, unless a contrary intent appears on the face of the conveyance. *Olin v. Denver & Rio Grande R.R. Co.*, 25 Colo. 177, 180, 53 P. 454, 455 (1898); *see also Overland Mach. Co. v. Alpenfels*, 30 Colo. 163, 170, 69 P. 574, 575 (1902) ("It may be stated as a general rule that a conveyance of a lot which borders upon a highway presumptively carries the title to the center of the street, if the grantor owns the land on which the highway is laid out, and that one is presumed to convey the highest estate he owns in the lands granted, unless a smaller estate is described." (citations omitted)); *id.*

at 171–72, 69 P. at 576 ("[U]nless the deed manifests an intention on the *part of the* grantor to limit the boundary line, the line, when the land is bounded by a highway, extends to the center of such highway, if the grantor is the owner of the fee." (citations omitted)); *Skeritt Inv. Co. v. City of Englewood*, 79 Colo. 645, 652, 248 P. 6, 9 (1926) (noting the general rule that "when land abuts on a street or highway it is presumed that the grantor intended by his deed thereof to convey to the center of such street or highway").

¶ 16 A number of courts apply the centerline presumption to the conveyance of land abutting a highway or street partly as an expression of public policy to avoid "a prolific source of litigation" arising from "narrow strips of land distinct in ownership from the adjoining territory." *See, e.g., Cuneo v. Champlin Refining Co.*, 178 Okla. 198,62 P.2d 82, 88 (Okla. 1936).[3] The language of Chief Justice Taft, while a circuit judge, illustrates this point of view:

> The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fees of such gores and strips in deed of the abutting lots.

*Paine v. Consumers' Forwarding & Storage Co.*, 71 F. 626, 632 (6th Cir.1895).

¶ 17 Other courts that apply the centerline presumption do so "not upon any consideration of public policy, but merely as a means of giving practical effect to the real intention of the grantor." *See, e.g., Rio Bravo Oil Co. v. Weed*, 121 Tex. 427, 50 S.W.2d 1080, 1084 (1932) (collecting cases). For example, the Washington Supreme Court has observed that the centerline presumption "is based on the presumption that the grantor intended to

---

3. *See also, duPont v. Am. Life Ins. Co.*, 187 A.2d 421, 423 (Del.1963) ("[A]s a matter of policy, it is said, courts will require one who claims to have retained in himself 'vexatious' title to such property to have made known his intention in that regard by appropriate language in the deeds."); *Cox v. Freedley*, 33 Pa. 124, 125 (1859) (explaining that the "general rule" is "one of policy and

convenience"); *Angelo v. Biscamp*, 441 S.W.2d 524, 526 (Tex.1969) (explaining that the centerline presumption is an " 'expression that it is against public policy to leave title of a long narrow strip or gore of land in a grantor conveying a larger tract adjoining or surrounding this strip' " (quoting *Strayhorn v. Jones*, 157 Tex. 136, 300 S.W.2d 623, 638 (1957))).

convey such fee along with and as a part of the conveyance of the abutting land, generally on the theory that the grantor did not intend to retain a narrow strip of land which could be of use only to the owner of the adjoining land." *Roeder Co. v. Burlington N., Inc.*, 105 Wash.2d 567, 716 P.2d 855, 861 (1986); *see also Standard Oil Co. v. Milner,* 275 Ala. 104, 152 So.2d 431, 436 (1962) (stating that the centerline presumption applies "on the theory that [the grantor] did not intend to retain a narrow strip of land which could hardly be of use or value except to the owner of the adjoining land").

¶ 18 Colorado first embraced the centerline presumption over one hundred years ago as a rule of conveyance, to give effect to the presumed intent of the grantor. In *Olin,* this court addressed a title dispute arising after a street in South Pueblo was vacated. 25 Colo. at 178, 53 P. at 455. The plaintiff claimed that title reverted to the original dedicator of the street, thus, as the dedicator's successor in interest, she was now the owner. *Id.* at 179, 53 P. at 455. The defendant claimed that when the street was vacated, title to the land underlying the vacated street vested in the owner of the abutting property. *Id.* at 179, 53 P. at 455. The defendant's deed referenced only the lot abutting the street, but not the street itself. Thus, the question posed to this court in *Olin* was whether the grantor intended the conveyance of a lot abutting a street to include the grantor's interest in the land underlying the street. *Id.* at 179, 53 P. at 455.

¶ 19 This court began its analysis with the familiar rule of construction that a grantor will be presumed to intend to convey along with the property all its appurtenant advantages and rights, and, "[w]hen there is no reservation in an absolute deed, the most valuable estate passes of which the grantor is seised." *Id.* at 179–80, 53 P. at 455 (citing *City of Denver v. Clements,* 3 Colo. 472, 481 (1877)). This court reasoned that the land underlying the street at issue was part of the grantor's most valuable estate because "it was apparent that the land so platted as streets was for the benefit of the owners of the lots embraced in such plat as well as for the use of the public." *Id.* at 180, 53 P. at

455. We cited the centerline presumption as a "general rule" that, "where a grantor conveys a parcel of ground bounded by a street, his grantee takes title to the center of such street, to the extent that the grantor has any interest therein" unless a contrary intent appears on the face of the conveyance. *Id.* at 180, 53 P. at 455. Applying this rule, this court held that when the grantor conveyed title to the lots abutting the street, without any reservation in the deed, he conveyed all his interest in the land underlying the street. *Id.* at 181, 53 P. at 456.

¶ 20 Four years later, in *Overland,* this court again faced a title dispute after a street was vacated. 30 Colo. at 169, 69 P. 574, 69P. at 575. In *Overland,* the original grantor described the lot abutting the street and the land underlying the street separately. 30 Colo. at 174, 69 P. at 577. The grantee later reconveyed the lot back to the grantor, but did not specifically describe the street. *Id.* at 174, 69 P. at 577. This court stated the centerline presumption is "a general rule that a conveyance of a lot which borders upon a highway presumptively carries the title to the center of the street, if the grantor owns the land on which the highway is laid out, and that one is presumed to convey the highest estate he owns in the lands granted, unless a smaller estate is described." *Id.* at 170, 69 P. at 575 (citations omitted). We then indicated "this rule is one of construction only" and "does not govern when it appears on the face of the deed that the intention was that the grantee should take only to the side of the street." *Id.* at 172, 69 P. at 576. We concluded in that case that it was evident that the parties intended the subsequent deed to convey only the adjacent lot because the original deed between the same parties described the lot and the street as two separate tracts. *Id.* at 174–75, 69 P. at 577. Together, *Olin* and *Overland* reflect that the centerline presumption is a rule of conveyance intended to give effect to the presumed intent of the grantor, unless a contrary intent appears on the face of the conveyance.

¶ 21 Importantly, this court's precedent confirms that the centerline presumption applies only if the grantor owns the land under-

lying the right-of-way. *See Olin*, 25 Colo. at 180, 53 P. at 455 (stating that grantee takes title to the center of such street, "to the extent that the grantor has any interest therein"); *Overland*, 30 Colo. 163, 69 P. at 575 (stating that conveyance presumptively carries the title to the center of the street "if the grantor owns the land on which the highway is laid out");.[4] This is not only a logical limitation on the rule, it is a precondition to applying the presumption. The purpose of the presumption is to give effect to the presumed intent of the grantor, and, "[w]here the grantor does not own the fee of the land, the law will not presume that he intended to convey that which he did not own." *Church v. Stiles*, 59 Vt. 642, 10 A. 674, 676 (Vt.1887). Put differently, "to say that a person acquiring title to an abutting lot thereby acquires a fee in the street, even though his grantor could not have conveyed such fee, would have the effect of taking property from one owner and giving it to another. The constitutional implications are obvious." *Standard Oil*, 152 So.2d at 438–39.

■ ¶ 22 In sum, this court's jurisprudence indicates that the primary purpose of applying the centerline presumption to the conveyance of land abutting a highway or street is to effectuate the probable intent of the grantor. If the grantor owns the fee

underlying the right-of-way, it is presumed that the grantor intends to convey it *because* a grantor generally does not intend to retain ownership in a narrow strip of land that is of little value to all but the adjacent landowner.

## B. Application of Centerline Presumption to Railroad Rights–of–Way

■ ¶ 23 We now turn to whether the centerline presumption applies in the context of railroad rights-of-way, which is an issue of first impression in this court. We determine that the rationale for applying the centerline presumption to roadways applies equally to railroad rights-of-way. Therefore, we hold that the centerline presumption applies to conveyances of property abutting a railroad right-of-way.

¶ 24 The majority of courts that have addressed the issue have held that the centerline presumption applies to a conveyance of property abutting a railroad right-of-way.[5] In 1928, the Eighth Circuit reasoned that the centerline presumption applied to railroad rights-of-way because such a right-of-way also involves a narrow strip of land that is "seldom of any present value to the grantor" and "likely to be productive of disputes and litigation." *Roxana Petroleum Corp. v. Sutter*, 28 F.2d 159, 162 (8th Cir.1928) (applying

---

4. In *Morrissey v. Achziger*, 147 Colo. 510, 364 P.2d 187 (1961), we stated, without citation to authority:

> Without discussing the question as to who owns that in dedicated streets alleys or roadways prior to vacation, there can be no dispute that upon vacation the owners of property abutting thereon take and become the fee owners of that portion abutting their property and to the center line of the vacated area.

147 Colo. at 513, 364 P.2d at 189. Although in that case we did not phrase the common law rule regarding the centerline presumption as conditioned on ownership in the land underlying the right-of-way, *Morrissey* does not stand for the proposition that the centerline presumption applies regardless of whether the grantors in the chain of title actually had an interest in the land underlying the abutting right-of-way. The issue before us in *Morrissey* was whether the centerline presumption applied to the construction of conveyances executed after a street was vacated. *Id.* at 514, 364 P.2d at 189. It was undisputed that, at the time the street was vacated, the landowner held title to the land underlying the vacated street. *Id.* at 513–14, 364 P.2d at 189.

5. Fourteen of the fifteen state supreme courts that have addressed the issue have held that the centerline presumption is applicable to railroad rights-of-way. *Ex Parte Jones*, 669 So.2d 161, 163–65 (Ala.1995); *Abbott v. Pearson*, 257 Ark. 694, 520 S.W.2d 204, 207 (1975); *Center Bridge Co. v. Wheeler & Howes Co.*, 86 Conn. 585, 86 A. 11, 12–13 (1913); *Smith v. Smith*, 622 A.2d 642, 647–48 (Del.1993); *Calumet Nat'l Bank v. AT & T*, 682 N.E.2d 785, 789–90 (Ind.1997); *Roxana Petroleum Corp. v. Jarvis*, 127 Kan. 365, 273 P. 661, 664 (1929); *Ill. Cent. R.R. v. Roberts*, 928 S.W.2d 822, 826–27 (Ky.1996); *Horn v. Muckerman*, 307 S.W.2d 482, 485 (Mo.1957); *City Motel v. State*, 75 Nev. 137, 336 P.2d 375, 380–81 (1959); *Cuneo v. Champlin Refining Co.*, 178 Okla. 198, 62 P.2d 82, 87–88 (1936); *Fleck v. Universal–Cyclops Steel Corp.*, 397 Pa. 648, 156 A.2d 832, 834 (1959); *Boney v. Cornwell*, 117 S.C. 426, 109 S.E. 271, 274 (1921); *Rio Bravo Oil Co. v. Weed*, 121 Tex. 427, 50 S.W.2d 1080, 1084–86 (1932); *Church v. Stiles*, 59 Vt. 642, 10 A. 674, 675–76 (1887); *Roeder Co. v. Burlington N., Inc.*, 105 Wash.2d 567, 716 P.2d 855, 861–63 (1986). *But see Stuart v. Fox*, 129 Me. 407, 152 A. 413, 418–19 (1930).

Kansas law). Similarly, the Supreme Court of Vermont applied the centerline presumption to the conveyance of land abutting a railroad right-of-way because "the law presumes [the grantor] intended to convey [land underlying a railroad right-of-way], and not retain a narrow, and oftentimes a long, strip of land, which for all practical purposes, would be of no value to him." *Church*, 10 A. at 675.

¶ 25 On the other hand, the Maine Supreme Court held that the centerline presumption does not apply to railroad rights-of-way. *Stuart v. Fox*, 129 Me. 407, 152 A. 413, 418–19 (1930). The court reasoned that landowners abutting a roadway have certain appurtenant advantages that landowners abutting a railway do not enjoy, namely, to use the road to access the land. *Id.* at 417. Thus, the assumption that underpins the centerline presumption–that a grantor does not intend to withhold that which has an advantage to the grantee–does not apply to railroad rights-of-way. *Id.* at 418.

¶ 26 We agree with the overwhelming majority of jurisdictions that have considered the issue that the primary justification for the centerline presumption is to honor the grantor's probable intent and not withhold a narrow strip of land which has little value to any but the adjacent landowner. The fact that the narrow strip of land lies in a railroad, as opposed to a roadway, does not change the grantor's presumed intent. *See Roxana Petroleum Corp.*, 28 F.2d at 162 ("[T]he reason for the rule is equally applicable to a deed of land abutting on a railroad right of way as to a deed of land abutting a public highway. The same narrow strip exists. It is seldom of any present value to the grantor."). Therefore, we hold that the centerline presumption applies to the construction of deeds conveying land adjacent to a railroad in the same manner as it applies to deeds conveying land adjacent to a roadway.

### C. Proof of Grantor's Ownership

¶ 27 After determining that the centerline presumption applies to the construction of deeds conveying land adjacent to railroad rights-of-way, we now analyze whether the centerline presumption applies absent evidence that the grantors in an adjacent landowner's chain of title actually held title to the land underlying the railroad right-of-way. We hold that, under the common law centerline presumption, an adjacent landowner may claim title to an abandoned right-of-way only if he or she can trace title to the owner of the fee underlying that right-of-way.

¶ 28 In this case, Plaintiffs produced copies of the "source deeds" from which the railroad originally obtained an easement and copies of the deeds under which Plaintiffs obtained their interests in the abutting properties. Plaintiffs did not produce the multiple deeds or other instruments necessary to trace their titles to the original grantors who owned the fee underlying the right-of-way. Rather, Plaintiffs argue that, under the centerline presumption, they have established ownership of the land underlying right-of-way by the mere fact of their adjacency, and the United States bears the burden of rebutting that presumption. The United States contends that Plaintiffs bear the burden to prove their title derived from a grantor who owned the underlying fee.

¶ 29 The burden of proving title or ownership of real property falls on the person alleging ownership. This court has held that, in title disputes, "the plaintiff must rely on the strength of his own title rather than on the weakness in or lack of title in defendants." *Morrissey*, 147 Colo. at 513, 364 P.2d at 189. Moreover, in a Fifth Amendment takings claim, the plaintiff has the burden to prove ownership in a vested property interest. *Cienaga Gardens v. United States*, 331 F.3d 1319, 1328 (Fed.Cir.2003). The centerline presumption does not absolve a plaintiff of this burden of proof. Before it can be presumed that the grantor intended to convey an interest in property underlying a right-of-way, it must be established that the grantor actually held an interest in that property. Therefore, in order to claim ownership in an abandoned right-of-way under the centerline presumption, an adjacent landowner must trace title to the owner of the fee underlying that right-of-way. Once the landowner adduces evidence that the grantor(s) in the chain of title actually owned the land underlying the right-of-way, the centerline

presumption operates to presume that the grantor(s) intended to convey that interest with the abutting property. However, absent that chain of title, the adjacent landowner cannot rely on the centerline presumption to claim ownership to the centerline of an abandoned right-of-way. This is because it is possible that a grantor in that chain of title may have manifested an intent to convey only the property abutting the right-of-way but not the interest underlying it.[6]

¶ 30 The Washington Supreme Court's opinion in *Roeder Co. v. Burlington Northern, Inc.*, 105 Wash.2d 567, 716 P.2d 855 (Wash.1986), supports our conclusion. At issue in *Roeder* was whether title to an abandoned railroad right-of-way should be quieted in the successor of the original grantor or in the owners of the property abutting the right-of-way. *Id.* at 857. One of the abutting landowners claimed title solely by virtue of being an abutting landowner, but did not present the chain of title through which they acquired their property. *Id.* at 858. The court rejected the proposition that a property owner receives an interest in an abandoned right-of-way merely through ownership of abutting land, holding that "[t]he presumption that the grantor intended to convey title to the center of the right-of-way is inapplicable where the adjoining landowner presents no evidence of having received his or her property from the owner of the right-of-way." *Id.* at 862.[7]

¶ 31 Finally, we note that in the context of a Fifth Amendment takings claim, it is especially important that the plaintiff trace title to a grantor in the chain of title who actually owned the land underlying the right-of-way.[8] Assuming compensation is owed, the government must compensate the true owner of the property taken.

■ ¶ 32 Plaintiffs suggest that section 43–2–302(1)(c) supports their position that the law vests ownership in adjacent landowners by the mere fact of their adjacency. *See* § 43–2–302(1)(c), C.R.S. (2012) ("In the event that a roadway bounded by straight lines is vacated, title to the vacated roadway shall vest in the owners of the abutting land, each abutting owner taking to the center of the roadway, except as provided in paragraphs (a) and (b) of this subsection (1)."). We disagree. This provision applies only to a "roadway" that has been "designated on the plat of any tract of land" or conveyed to or acquired by "a county or town or city or by the state or by any of its political subdivisions for use as a roadway." § 43–2–302(1), C.R.S. (2012). The General Assembly has not enacted a similar statute governing the abandonment of railroad rights-of-way.

¶ 33 In sum, we hold that, to claim presumptive ownership to the centerline of the right-of-way under the common law centerline presumption, the adjacent landowner must produce evidence that his or her title derives from the owner of the land underlying the right-of-way.

### III. Conclusion

¶ 34 The certified question in this case asks whether Colorado law presumes that abutting landowners own the underlying fee to the centerline of an abandoned railroad right-of-way. We conclude that the centerline presumption is a common law rule of conveyance that presumes that a grantor who conveyed land abutting a right-of-way

---

6. We note that *Olin* and *Overland* concerned the effect of a single conveyance, and all possible owners of the land at issue were parties to the litigation. By contrast, in a case such as this, where multiple conveyances have occurred over the last century, it is possible that some grantors may have manifested an intent to convey only the property abutting the right-of-way but not the interest underlying it. If so, not only is it possible that one or more adjacent landowners cannot claim title to the land underlying the right-of-way, but there may be other rightful owners with potential claims to the land who are not part of the litigation and whose interests may not be adequately represented.

7. Several courts have analyzed chains of title back to the original owner of the fee in cases involving abandoned railroad rights-of-way. *See, e.g., Ex Parte Jones*, 669 So.2d at 161–63; *Smith*, 622 A.2d at 643–45; *Roxana Petroleum Corp.*, 273 P. at 661–63; *Cuneo*, 62 P.2d at 83–85; *Fleck*, 156 A.2d at 833–34; *Rio Bravo Oil Co.*, 50 S.W.2d at 1081–83.

8. The record before us reflects that Plaintiffs have acknowledged to the Court of Federal Claims that obtaining and reviewing those chains of title will take only a few months.

intended to convey land to the center of the right-of-way to the extent that the grantor owned the property underlying the right-of-way, and absent a contrary intent on the face of the conveyance. We hold that the centerline presumption applies to railroad rights-of-way. We also hold that, to claim presumptive ownership to the centerline of a railroad right-of-way, an adjacent landowner must produce evidence that his or her title derives from the owner of the land underlying the right-of-way. Accordingly, we answer the certified question in the negative and return this case to the United States Court of Federal Claims for further proceedings.

Justice RICE dissents, and Justice COATS and Justice EID join in the dissent.

Justice RICE, dissenting.

¶ 35 I agree that the centerline presumption applies to abandoned railroad right-of-ways in Colorado. I would differ, however, in how the presumption arises and therefore the implications of the presumption in this case. Consequently, I would answer the certified question in the affirmative and must respectfully dissent.

¶ 36 The majority purports to adopt the centerline presumption, but then places a burdensome and comprehensive requirement on the plaintiffs as a threshold matter to give rise to the presumption. Specifically, the majority would require landowners who abut or are adjacent to an abandoned railroad right-of-way to produce a chain of title spanning more than a hundred years before the presumption arises. A rebuttable presumption is meant to lend weight to a particular inference and shift the evidentiary burden once a certain threshold requirement is met. *See* CRE 301 ("In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast."); *Bd. of Assessment Appeals v. Sampson*, 105 P.3d 198, 204 (Colo.2005) ("As a general notion, a rebuttable presumption lends weight to particular inferences from a stated set of facts, but can be overcome by the party against whom the presumption operates."). The centerline presumption as articulated by the majority essentially requires a plaintiff to prove his entire case in order for the presumption to arise by holding that "an adjacent landowner may claim title to an abandoned right-of-way only if he or she can trace title to the owner of the fee underlying that right-of-way." Maj. op. 559. This holding effectively eviscerates any meaning of the word "presumption." *See, e.g., Black's Law Dictionary* 1304 (9th ed. 2009) (Defining "presumption" as "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts.").

¶ 37 I would hold that the centerline presumption arises by virtue of owning property adjacent to or abutting an abandoned railroad right-of-way and that the landowners need only produce evidence of fee ownership of the adjacent or abutting parcel to give rise to the presumption. As with most presumptions, the defendant may then rebut the centerline presumption by producing evidence that the adjacent or abutting landowner does not own title to the fee underlying the narrow strip because that fee was reserved or otherwise carved out.

¶ 38 This interpretation of the centerline presumption comports with our decision in *Olin v. Denver & R.G.R. Co.*, in which we first adopted the centerline presumption. 25 Colo. 177, 181, 53 P. 454, 456 (1898) ("[O]ur conclusion is that ... the title to the center of such streets vest in the owners of the lots abutting that portion of the streets so vacated."). Applied thus, the centerline presumption would acknowledge the grantor's intent to convey the adjoining strip subject to public use which is typically inaccessible and of little value to the grantor if retained. Moreover, as a practical matter, the centerline presumption prevents the situation in which thousands of miles of narrow strips of land are held by undetermined owners.

¶ 39 Here, Plaintiffs own land adjacent to or abutting the former railroad right-of-way.

Therefore, I would hold that the centerline presumption arises and the burden shifts to the Defendants to prove that the Plaintiffs do not own to the centerline of the railroad right-of-way. Accordingly, I would answer the certified question in the affirmative and respectfully dissent.

I am authorized to state that Justice COATS and Justice EID join in the dissent.